UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

RAMAINE WILLIAMS,

                              Plaintiff,

                                                    5:23-cv-00240
                                                    (DNH/TWD)

v.

CITY OF AUBURN, NY; CAYUGA COUNTY;
DISTRICT COUNTY ATTORNEY FOR CITY OF
AUBURN AND COUNTY OF CAYUGA,

                              Defendants.

─────────────────────────────────

APPEARANCES:                                        OF COUNSEL:

RAMAINE WILLIAMS
  *Plaintiff, pro se*
13465
Cayuga County Jail
7445 County House Road
Auburn, NY 13021

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**ORDER AND REPORT-RECOMMENDATION**

I.    **INTRODUCTION**

        On or about January 23, 2023, *pro se* plaintiff Ramaine Williams ("Plaintiff" or

"Williams"), currently confined at the Cayuga County Jail, commenced this action in the

Western District of New York ("WDNY") pursuant to 42 U.S.C. § 1983 alleging constitutional

violations arising from his arrest, prosecution, and detention in Cayuga County, New York.

(Dkt. No. 1.)  He did not pay the filing fee and sought leave to proceed *in forma pauperis*

("IFP").  (Dkt. Nos. 2, 5.)  On February 21, 2023, the action was transferred to this District

pursuant to 28 U.S.C. §1406(a).  (Dkt. No. 6.)  The WDNY did not consider the merits of

Plaintiff's IFP application or the sufficiency of the complaint.  *Id*.

The Clerk has forwarded Plaintiff's complaint and IFP application to this Court for

review.  (Dkt. Nos. 1, 5.)  Plaintiff sues the City of Auburn, NY (the "City of Auburn"), Cayuga

County, and the District County Attorney for the City of Auburn and County of Cayuga

("District Attorney")[1] (together, "Defendants") alleging violations of his constitutional rights

under the Fourth, Fifth, Sixth, and Fourteenth Amendments.  (Dkt. No. 1.)

## II.    DISCUSSION

### A.    IFP Application

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d

Cir. 2010)).

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), and has filed

the inmate authorization form required in this District, he is granted permission to proceed IFP.

---

[1]  The Clerk is directed to amend the docket and add "District County Attorney for City of Auburn and County of Cayuga" as a Defendant as set forth in paragraph 1 of the complaint.

[2]  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

(Dkt. Nos. 3, 5.)  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court must review the claims set forth in the complaint.

### B.      Legal Standard

Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the Court determines that the action (1) is frivolous,[3] malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2); 28 U.S.C. § 1915(e)(2)(B).  The Federal Rules of Civil Procedure require a complaint to include enough facts to state a claim for relief "that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court will generally afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, leave to amend pleadings may be denied when any amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right,

---

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional or federal law violation. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) ("supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*"); Because "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution," the personal involvement of each defendant must be plausibly alleged in the complaint. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

When a plaintiff asserts a Section 1983 claim against a municipal defendant, the plaintiff must also demonstrate that the constitutional deprivation "resulted from a municipal custom or policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991). Municipal liability is "an extension of liability, not an independent cause of action, and therefore requires an underlying constitutional violation." *Soto v. City of New York*, 132 F. Supp. 3d 424, 459 (E.D.N.Y. 2015) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).

### C.    Plaintiff's Allegations

In evaluating the complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).

On June 14, 2022, Auburn City Police Officer Spinelli ("Spinelli") "performed an illegal traffic stop." (Dkt. No. 1 at 1.[4])  Spinelli stopped Plaintiff "simply because he recognized the plaintiff and not a violation of the law."  *Id*.  Later, Spinelli claimed "failure to signal was the reason for the stop, but plaintiff did use both turn signals on the car."  *Id*.  Spinelli also performed an "unlawful search of plaintiff's person and car without cause or consent" resulting in an unlawful seizure of Plaintiff's money, property, car, and person.  *Id*.

"As a result of said unlawful search and seizure, a felony complaint was issued but was created and affirmed 4 days (6-10-22) before the traffic stop evidencing premeditation of violating Plaintiff's rights and invalidating the verification, certification, and readiness announcement."  *Id*.  "Said complaint was issued by a 3rd officer, Jacob Turner."  *Id*.

Plaintiff was assigned an attorney by Cayuga County.  *Id*.  However, "from June 2022 through present day," J. Sapio, Esq. ("Sapio") "failed to communicate through calls, emails or visits."  *Id*.  Additionally, although Sapio "drafted an Omnibus motion raising issues meritorious of dismissal," Sapio "failed to address the fraudulent felony complaint or submit said Omnibus motion denying Plaintiff an opportunity for case dismissal and effective assistance of counsel."  *Id*. at 1-2.  "Furthermore, Spinelli[5] denied Plaintiff an opportunity to assist in Plaintiff's defense via his failure to communicate."  *Id*. at 2.

"Plaintiff requests injunctive relief of an order to the Cayuga County Sheriff releasing him from incarceration, expunging his criminal record, and an order to the Cayuga County D.A. to end all prosecution of this action in the present and future."  *Id*.

---

[4]  Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[5]  Plaintiff is likely referring to Sapio and not Spinelli.

Construed liberally, Plaintiff claims a series of constitutional violations arising from his June 14, 2022, arrest, including a violation of his Fourth and Fourteenth Amendment rights based on what Plaintiff claims was an illegal traffic stop and search, an unlawful seizure of his property, and his false arrest based on fabricated information. The complaint also references violations of the Fifth and Sixth Amendments.

### D.    Sufficiency of Claims

#### 1.    District Attorney

Plaintiff sues the District County Attorney for the City of Auburn and County of Cayuga. Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Functions to which absolute immunity applies are when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, involves the exercise of discretion. *See Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion.") (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). This includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), and whether and when to drop charges. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981). "This immunity attaches to conduct in court, as well as conduct 'preliminary

to the initiation of a prosecution and actions apart from the courtroom.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976).

"[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).  Absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (cleaned up).  Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor*, 640 F.2d at 452, "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Here, Plaintiff's allegations against the District Attorney involved in his prosecution relating to the alleged "illegal traffic stop," "unlawful" search and seizure of Plaintiff's person and personal items, and alleged perjured felony complaint, all relate to the carrying out of prosecutorial functions.  Based on the authority cited above, the District Attorney is immune from suit and liability based on absolute prosecutorial immunity.

Moreover," [w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'" *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.

1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich v. New York*, No. 21-CV-3835, 2022

WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 20221) ("[A]ny claims Plaintiff may raise against the

[District Attorney] Defendants in their 'official capacity' would be precluded by immunity under

the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319, 2021 WL 3037709

(GTS/ML), at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims

against the defendant assistant district attorneys in their official capacities—which were

effectively claims against the State of New York—as barred by the Eleventh Amendment),

*adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Therefore, the Court recommends that Plaintiff's Section 1983 claims against the District

Attorney be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii),

1915A(b)(2).

### 2.      City of Auburn and Cayuga County

Plaintiff sues the City of Auburn and Cayuga County.  It is well-established that a

municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.  *See

Monell v. Dep't of Soc. Servs. of N.Y. City*, 436 U.S. 658, 691 (1978); *Agosto v. N.Y.C. Dep't of

Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) ("*Monell* expressly prohibits *respondeat superior* liability

for municipalities" (citations omitted)).  To hold a municipality liable in a Section 1983 action,

"a plaintiff is required to plead and prove three elements: (1) an official custom or policy that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of

Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted).  To establish the

existence of a municipal policy or custom, the plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by
> the municipality; (2) actions taken or decisions made by municipal
> policymaking officials, i.e., officials with final decisionmaking
> authority, which caused the alleged violation of the plaintiff's civil

> rights; (3) a practice so persistent and widespread as to practically
> have the force of law or that was so manifest as to imply the
> constructive acquiescence of senior policy-making officials; or (4)
> that a policymaking official exhibited deliberate indifference to
> constitutional deprivations caused by subordinates.

*Avant v. Miranda*, No. 21-CV-0974, 2021 WL 1979077, at *3 (E.D.N.Y. May 18, 2021) (cleaned

up).  A single incident of unconstitutional activity by a municipal employee is generally

insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal

liability.  *Griffith v. Sadri*, No. 07-cv-4824, 2009 WL 2524961, at *8 (E.D.N.Y. Aug. 14, 2009)

(collecting cases).

    Here, Plaintiff fails to articulate how the City of Auburn or Cayuga County violated his

constitutional rights.  Even when liberally construed, there are no factual allegations that a

municipal policy or custom existed that caused the alleged constitutional deprivations of which

Plaintiff complains.

    Further, as noted above, the Second Circuit Court of Appeals has unequivocally held that

"prosecutorial acts may not 'fairly be said to represent official policy' of the County," because

"[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-

judicial capacity, represents the State not the county."  *Baez v. Hennessy*, 853 F.2d 73 (2d Cir.

1988) (citations omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y.1988).  No

county policy can require district attorneys to depart from the policy of the state, nor does the

county have a right to establish policy concerning how a district attorney should prosecute

violations of state criminal laws.  *Id*.  "Indeed, it would be a violation of a district attorney's

ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county." *Id.* at 77.[6]

Therefore, the Court recommends that Plaintiff's Section 1983 claims against the City of Auburn and Cayuga County be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### 3. Other Referenced Individuals

Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. United States*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims"). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-cv-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007).

Here, the complaint references Spinelli, Turner, and Sapio. Because the aforementioned individuals are not identified as defendants in the caption or list of parties, the Court will not construe the complaint to include any claims or causes of action against these individuals.[7]

---

[6] "Moreover, even if the County were liable for the prosecutorial acts of the Attorney and her office, no claim would lie, because the District Attorney and individuals employed by her, acting within in their official capacities, are protected by absolute immunity for prosecutorial acts in pursuing a criminal prosecution and presenting the State's case." *McLaurin v. New Rochelle Police Officers*, 368 F. Supp. 2d 289, 295 (S.D.N.Y. 2005) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)).

[7] The Court notes however, insofar as Plaintiff seeks to impose liability on his attorney based on the allegations in the current complaint, such claims are not plausible because attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983. *See, e.g.*, *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a

### 4.   *Heck v. Humphrey* Bars Plaintiff's Section 1983 Claims

When a claim under Section 1983 calls into question the validity of an underlying

conviction, a district court must dismiss the claim, unless the conviction has been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)

(*Heck's* bar applies regardless of whether a plaintiff seeks damages or injunctive relief).

The Court takes judicial notice of Williams' challenge to a November 18, 2022, judgment

of conviction, pursuant to a guilty plea, from Cayuga County Court, for fourth degree criminal

possession of a controlled substance and fourth degree criminal contempt pursuant to 28 U.S.C.

§ 2254.  *See Williams v. Schenck*, No. 9:22-cv-01334 (BKS/TWD) (NDNY) (filed Dec. 13,

2022), ECF Dkt. No. 1 (petition), Dkt. No. 5 (amended petition).  According to the amended

petition, filed February 8, 2023, Williams was stopped and arrested by "Officer Spinelli" on June

14, 2022, "Officer Turner" signed a perjured felony complaint four days before the illegal traffic

stop, "Cayuga County District Attorney Grome Antonacci" conducted the grand jury

proceedings and prosecuted Williams, and "Attorney Sapio" rendered ineffective assistance of

counsel.  Williams, represented by "Joe Sapio," pleaded guilty and was scheduled to be

sentenced on March 30, 2023.  *Id*., ECF Dkt. No. 5.

On February 17, 2023, the Hon. Brenda K. Sannes, Chief United States District Judge,

liberally construed Williams' amended petitions as arguing that he was entitled to federal habeas

corpus relief because (1) he was stopped without probable cause on June 14, 2022, (2) the felony

complaint and grand jury proceedings were deficient; and (3) his trial counsel was

constitutionally ineffective.  *Id*., ECF Dkt. No. 6 at 2.  By Decision and Order filed February 23,

---

lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act
'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.").

2023, the amended petition was dismissed without prejudice as premature for failure to exhaust

available state court remedies.  *Id.*

In *Heck v. Humphrey*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's issuance
> of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence that has not
> been so invalidated is not cognizable under § 1983.

512 U.S. at 487.  "Subsequently, the Supreme Court and the Second Circuit extended *Heck's*

reach to Section 1983 lawsuits brought during pending criminal prosecutions."  *Dawson v.

Lippiccolo*, 590 F. Supp. 3d 514, 517 (E.D.N.Y. 2022) (finding plaintiff's challenge to his

ongoing criminal prosecution based on his claim of an "illegal search" to be barred by *Heck* and

denying leave to amend); *see also Curtis v. Rockland Cty.*, No. 21-CV-04294, 2022 WL

16540705, at *5 (S.D.N.Y. Oct. 28, 2022) ("A judgment in Plaintiff's favor on the unlawful

search and seizure claim would clearly imply the invalidity of his conviction, and the claim is

therefore barred by *Heck v. Humphrey*.").

Here, all of Plaintiff's Section 1983 claims arise from Plaintiff's June 2022 prosecution

and conviction in Cayuga County.  As is readily apparent, affording the *pro se* complaint a

liberal construction, there is no allegation that Plaintiff's conviction has been invalidated.

Indeed, "Plaintiff requests injunctive relief of an order to the Cayuga County Sheriff releasing

him from incarceration, expunging his criminal record, and an order to the Cayuga County D.A.

to end all prosecution of this action in the present and future."  (Dkt. No. 1 at 2.)  Given that

Plaintiff has not alleged any injury other than those related to his conviction and imprisonment,

which he asserts resulted from the alleged illegal search and arrest on June 14, 2022, he cannot recover any damages or seek injunctive relief for these injuries unless and until his conviction is overturned.  *See Curtis v. Rockland Cty.*, 2022 WL 16540705, at *5.  Therefore, because Plaintiff's success on his civil rights claims in this action would necessarily invalidate the conviction, which is not alleged to have been reversed or vacated, Plaintiff's Section 1983 claims are not cognizable under *Heck*.  Thus, *Heck's* bar precludes their adjudication.[8]

Accordingly, at this juncture, Plaintiff's Section 1983 claims are not plausible and the Court recommends dismissing the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).  *See Arrington v. LoTempio*, No. 22-CV-6141, 2023 WL 375098, at *3-4 (W.D.N.Y. Jan. 24, 2023) (*sua sponte* dismissing plaintiff's illegal search and denial-of-fair-trial claims without prejudice pursuant to *Heck*, including related conspiracy claims, brought pursuant to Section 1983 and *Bivens*).

### E.      Denial of Leave to Amend

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to amend may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  At this juncture, because the problems with Plaintiff's Section 1983 claims are substantive and because of the bar imposed by *Heck*, the Court recommends dismissal of the complaint in its entirety without leave to amend.

**WHEREFORE**, for these reasons, it is hereby

---

[8]  "Although '[Section] 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim,' *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff has the opportunity to seek habeas relief once his constitutional claims are properly exhausted in state court."  *Braithwaite v. Collins*, No. 22-CV-0016, 2023 WL 2350030, at *7 (E.D.N.Y. Mar. 3, 2023).

**ORDERED** that Plaintiff's IFP application (Dkt. No. 5) is **GRANTED** only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith; and it is further

**ORDERED** that the Clerk is directed to amend the docket to add "District County Attorney for City of Auburn and County of Cayuga" as a Defendant; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b)(1); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 17, 2023
    Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[9]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]     At the time the action was originally filed,
the Honorable Leonard B. Sand, United States
District Judge, granted plaintiff's application for *in
forma pauperis* status based on plaintiff's *ex parte*
submission (Docket Item 1). Although the present
application seeking to revoke plaintiff's *in forma
pauperis* status is non-dispositive, I address it by
way of a report and recommendation to eliminate
any appearance of a conflict between the decision
of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2]  By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2]     Plaintiff sent this form directly to my chambers,
and it has not been docketed by the Clerk of the
Court. The form will be docketed at the time this
Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious

2010 WL 5185047

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3 It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
Case 5:23-cv-00240-DNH-TWD    Document 8    Filed 04/17/23    Page 17 of 83
2010 WL 5185047

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

    Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

    *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

## All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

**ORDER**

ANALISA TORRES, District Judge:

 **\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

**BACKGROUND** [1]

[1]   Unless otherwise stated, the following facts are
taken from the complaint and assumed, for
purposes of this motion, to be true. *ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained— but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

[2]    The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal.[3]

[3]  Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

### IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

[4]    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5]    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

#### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

#### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

6          Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

*7   Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity—from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable

cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

[7]    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

#### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4,

2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g., Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at \*3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at \*4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021. [9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

9

Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10

Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11] As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

### A. Time Bar

#### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

[12]   As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City [13]

[13]   Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

**\*12**  The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022,** Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

### All Citations

Slip Copy, 2022 WL 992885

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

### ORDER and REPORT-RECOMMENDATION

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]     The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id.* at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id.*) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]     "A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all
purposes." Fed. R. Civ. P. 10(c); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
1991) ("the complaint is deemed to include any
written instrument attached to it as an exhibit or
any statements or documents incorporated in it by
reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id.*)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id*.)

3     Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id*.) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id*.)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id*. at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id*.)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id*.) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id*.) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id*. at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id*. at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

4     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http:// pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

[5]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*.[6]

[6]    The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5**  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment.[7]

[7]    Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

## C. Claims Against Defendants Sharp and Soares

### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolute immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

---

[8]   The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**\*7**  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y.

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9]    Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10]    Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

 **\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]      Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]    As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2021 WL 3037709

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3032691

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

*1  Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1]   When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at *1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false arrest
claims against Defendants Filli and Hurley in their individual
capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

*2  **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1979077
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Rickey AVANT, Plaintiff,
v.
Detective Juan MIRANDA, Detective Anthony Cousins,
Lt. Steven L. Horowitz, Sgt. Brian S. Connolly,
and Hempstead Police Department, Defendants.

21-CV-0974(JS)(SIL)
|
Signed 05/18/2021

**Attorneys and Law Firms**

For Plaintiff: Rickey Avant, pro se, 2020001153, Nassau County Correctional Center, 100 Carman Avenue, East Meadow, New York 11554.

For Defendants: No appearances.

MEMORANDUM & ORDER

SEYBERT, District Judge:

**\*1** On or around February 22, 2021, pro se plaintiff Rickey Avant ("Plaintiff") filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against Detective Juan Miranda ("Det. Miranda"), Detective Anthony Cousins ("Det. Cousins"), Lieutenant Steven L. Horowitz ("Lt. Horowitz"), Sergeant Brian S. Connolly ("Sgt. Connolly"), and the Hempstead Police Department (the "HPD," and collectively, "Defendants"). (See Compl., ECF No. 1.) Plaintiff also filed an application to proceed in forma pauperis ("IFP"). (IFP Mot., ECF No. 2.) For the reasons that follow: (1) Plaintiff's application to proceed in forma pauperis GRANTED; (2) Plaintiff's Section 1983 claims against the HPD are DISMISSED WITH PREJUDICE; (3) Plaintiff's Section 1983 claims against Det. Miranda, Det. Cousins, Lt. Horowitz, and Sgt. Connolly are DISMISSED WITHOUT PREJUDICE; (3) this action is STAYED pending the conclusion of Plaintiff's underlying state court criminal proceeding; and (4) Plaintiff is GRANTED leave to file an amended complaint after resolution of the underlying criminal proceeding.

BACKGROUND [1]

[1]    Excerpts from the Complaints are reproduced exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

Plaintiff utilized the Court's Section 1983 complaint form and alleges:

> On June 11, 2020 at 4:37 p.m. at 100 Terrace Ave. in Hempstead, NY 11550, Detectives Juan Miranda Shield # 198, & Anthony Cousins Shield # 1217 unlawfully seized me & violated my Constitutional rights (4th Amendment) by drawing their guns on me, depriving me of my liberty of movement, invading my privacy & arresting me for a crime that they thought I had committed. They also filed false felony complaints in the Hempstead Police Department Accusing me of being a suspect of a crime that I did not commit & now my freedom has been taken from me.

(Compl. at ECF p. 2.) [2] Plaintiff further alleges that: "Yes medical treatment was received. I was taken to the Nassau County Medical Center to receive a medical treatment for my Asthma. This arrest caused me to have an Asthma attack." (Id. ¶ II.A.)

[2]    When citing to the Complaint, the Court refers to the page numbers generated by the Court's Electronic Case Filing system.

As for relief, Plaintiff seeks damages award in:

> the sum of $1 million for false imprisonment, pain & suffering, & cruel & unusual punishment for the hardship I had to endure being locked down in Nassau County Jail

2021 WL 1979077

during an epidemic. I also want to
be reimbursed for all the money
my family spent supporting me on
commissary, packages, mail postage,
& collect calls.

(Id. at ECF p. 3, ¶ III.)


DISCUSSION

I. Plaintiff's *In Forma Pauperis* Application is Granted
Upon review of Plaintiff's declaration in support of the
application to proceed in forma pauperis, the Court finds that
Plaintiff is qualified by his financial status to commence this
action without prepayment of the filing fee. See 28 U.S.C. §
1915(a)(1). Therefore, Plaintiff's request to proceed in forma
pauperis is GRANTED.


II. Consideration of 28 U.S.C. § 1915
**\*2** 28 U.S.C. § 1915 requires a district court to dismiss
an in forma pauperis complaint if the action is frivolous or
malicious, fails to state a claim upon which relief may be
granted, or seeks monetary relief against a defendant who
is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)
(B)(i)-(iii), 1915A(b). An action is frivolous as a matter of
law when, inter alia, it is based on an "indisputably meritless
legal theory" or when it "lacks an arguable basis in law ...,
or [when] a dispositive defense clearly exists on the face of
the complaint." Livingston v. Adirondack Beverage Co., 141
F.3d 434, 437 (2d Cir. 1998). The Court is required to dismiss
the action as soon as it makes such a determination. See 28
U.S.C. § 1915A.

Courts are obliged to construe the pleadings of a pro se
plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant,
537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis,
357 F.3d 197, 200 (2d Cir. 2004). However, a complaint
must plead sufficient facts to "state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citations omitted). The plausibility standard requires
"more than a sheer possibility that a defendant has acted
unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co.,

671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual
allegations' " are not required, "[a] pleading that offers 'labels
and conclusions' or 'a formulaic recitation of the elements of
a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 555).

With these standards in mind, the Court considers Plaintiff's
claims below.


III. Analysis of Plaintiff's Claims Pursuant to Section 1983
Section 1983 provides that

> [e]very person who, under color of any
> statute, ordinance, regulation, custom,
> or usage, of any State ... subjects, or
> causes to be subjected, any citizen of
> the United States ... to the deprivation
> of any rights, privileges, or immunities
> secured by the Constitution and laws,
> shall be liable to the party injured ....

42 U.S.C. § 1983. To state a claim under Section 1983, a
plaintiff must "allege that (1) the challenged conduct was
attributable at least in part to a person who was acting under
color of state law and (2) the conduct deprived the plaintiff
of a right guaranteed under the Constitution of the United
States." Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223
(E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53
(2d Cir. 1999)). Section 1983 "creates no substantive rights;
it provides only a procedure for redress for the deprivation of
rights established elsewhere." Sykes v. James, 13 F.3d 515,
519 (2d Cir. 1993).


A. Plaintiff's Section 1983 Claims Against the HPD are
Dismissed With Prejudice
It is well-established that "under New York law, departments
that are merely administrative arms of a municipality do not
have a legal identity separate and apart from the municipality
and, therefore, cannot sue or be sued." Davis v. Lynbrook
Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002).
Thus, Plaintiff's claims against the HPD cannot proceed
because the HPD has no legal identity separate and apart from
the Incorporated Village of Hempstead (the "Village").
Accordingly, the claims against the HPD are DISMISSED
WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)

(B)(ii), 1915A(b)(1). See, e.g., Bussey v. Devane, No. 13-CV-3660, 2013 WL 4459059, at *5 (E.D.N.Y. Aug. 16, 2013) (dismissing Section 1983 claims against the HPD because it lacks the capacity to be sued).

**\*3** Given Plaintiff's pro se status, the Court liberally construes the Complaint to assert a Section 1983 claim against the municipality, the Village. As discussed below, any claims against the Village are dismissed without prejudice.

It is well-established that a municipality, such as the Incorporated Village of Hempstead, cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (internal citation omitted).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 563 U.S. at 60-61; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 563 U. S. at 61; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates" Cash, 654 F.3d at 334 (internal quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (A municipal custom may be found when "faced with a pattern of misconduct, [the

municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." (citation omitted) (second alteration in original)).

Here, when liberally construing the Complaint, there are no factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against the Village. Accordingly, to the extent alleged, claims against the Village are DISMISSED WITHOUT PREJUDICE.

### B. Plaintiff's Section 1983 Claims Against Lt. Horowitz and Sgt. Connolly are Dismissed Without Prejudice

Although Plaintiff names Lt. Horowitz and Sgt. Connolly in the caption of the Complaint, neither Defendant is mentioned in the body of the Complaint. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)).

**\*4** Moreover, as the Second Circuit recently made clear, "there is no special rule for supervisory liability" and, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 619-20 (2d Cir. 2020). Where a Section 1983 claim fails to allege a defendant's personal involvement, the claim fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, as is readily apparent, Plaintiff has not alleged factual allegations of conduct or inaction attributable to Lt. Horowitz or Sgt. Connolly. The failure to allege any facts demonstrating their personal involvement is fatal to Plaintiff's Section 1983 claims against Lt. Horowitz or Sgt. Connolly. See Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d Cir. 2013) (holding that a plaintiff proceeding under Section 1983 must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation). Accordingly, Plaintiff's Section 1983 claims against Lt. Horowitz and Sgt. Connolly are DISMISSED

WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)
(2)(B)(ii), 1915A(b).

#### C. Plaintiff's Section 1983 Claims Against Det. Miranda and Det. Cousins are Dismissed Without Prejudice

Plaintiff alleges that Det. Miranda and Det. Cousins

> unlawfully seized me & violated
> my Constitutional rights (4[th]
> Amendment) by drawing their guns
> on me, depriving me of my liberty
> of movement, invading my privacy
> & arresting me for a crime that
> they thought I had committed. They
> also filed false felony complaints
> in the Hempstead Police Department
> accusing me of being a suspect of a
> crime that I did not commit & now my
> freedom has been taken from me.

(Compl. at ECF p. 2.) The Court construes these allegations
as asserting false arrest and false imprisonment claims against
Det. Miranda and Det. Cousins.

A Section 1983 claim for false arrest "is substantially the
same as a claim for false arrest under New York law."[3]
Bonadies v. Town of Amenia, No. 19-CV-10890, 2020 WL
5209510, at *10 (S.D.N.Y. Aug. 31, 2020) (quoting Weyant
v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). To succeed on a
false arrest claim under New York law, a plaintiff must show
that "(1) the defendant intended to confine the plaintiff, (2) the
plaintiff was conscious of the confinement, (3) the plaintiff
did not consent to the confinement, and (4) the confinement
was not otherwise privileged." Wheeler v. Kolek, No. 16-
CV-7441, 2020 WL 6726947, at *4 (S.D.N.Y. Nov. 16,
2020) (internal quotation marks and citation omitted); see also
Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012). The
existence of probable cause is a complete bar to a claim for
false arrest. Ackerson v. City of White Plains, 702 F.3d 15, 19
(2d Cir. 2012) ("Probable cause is a complete defense to an
action for false arrest.") (citation and internal quotation marks
omitted).

[3]     "Plaintiff's false arrest and false imprisonment
claims are addressed together for the purposes of

this court's analysis." Montes v. O'Shea, No. 21-
CV-0303, 2021 WL 1759853, at *3 n.6 (N.D.N.Y.
Apr. 6, 2021), Report and Recommendation
Adopted, 2021 WL 1758858 (N.D.N.Y. May 4,
2021) (citing Posr v. Doherty, 944 F.2d 91, 96
(2d Cir. 1991) ("False arrest is simply an unlawful
detention or confinement brought about by means
of an arrest rather than in some other way and
is in all other respects synonymous with false
imprisonment.")).

**\*5** Further, "[a]n arrest is privileged as a matter of law if
the individual claiming false arrest is convicted of the crime
for which he or she was arrested." Icangelo v. Doe, No.
13-CV-1638, 2013 WL 1455313, at *2 (E.D.N.Y. Apr. 2,
2013); see also Sanchez v. Miller, No. 20-CV-0620, 2020
WL 1140843, at *6 (S.D.N.Y. Mar. 6, 2020) ("[A] civil
rights plaintiff cannot pursue claims that would necessarily
be inconsistent with a conviction."). Therefore, if plaintiff
is subsequently convicted of the charges for which he was
arrested, to recover damages for an allegedly false arrest,
he "must prove that the conviction or sentence has been
reversed on direct appeal, expunged by executive order,
declared invalid by a state tribunal authorized to make such
determination, or called into question by a federal court's
issuance of a writ of habeas corpus[.]" Heck v. Humphrey,
512 U.S. 477, 486-87 (1994).

First, following this guidance, the Court takes judicial notice
that New York State Office of Court Administration records
reflect that Judge Robert G. Bogle scheduled an appearance
for June 7, 2021 relating to the arrest that forms the basis of
Plaintiff's Complaint here.[4]

[4]     (https://iapps.courts.state.ny.us/webcrim_attorney/
DefendantSearch (last visited May 17, 2021));
Toussaint v. Guadarama, No. 21-CV-0032, 2021
WL 1648648, at *1 n.1 (D. Conn. Apr. 27, 2021)
("The Court may 'take judicial notice of relevant
matters of public record.' " (quoting Giraldo v.
Kessler, 694 F.3d 161, 164 (2d Cir. 2012))).

Second, although the charges that form the basis of the
Complaint are pending, the Court finds that Heck, cited
above, does not bar Plaintiff's claims here. Specifically, "Heck
bars a § 1983 claim based on an extant conviction, but it has no
application to an anticipated future conviction." Stegemann
v. Rensselaer Cty. Sheriff's Office, 648 F. App'x 73, 76 (2d
Cir. 2016); see Wallace v. Kato, 549 U.S. 384, 393 (2007)
(rejecting the argument that "an action which would impugn

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

an anticipated future conviction cannot be brought until that conviction occurs and is set aside" and stating "[w]e are not disposed to embrace this ... extension of Heck" (emphasis in original)); McDonough v. Smith, 139 S. Ct. 2149, 2157 (2019) (noting that "some claims do fall outside Heck's ambit when a conviction is merely 'anticipated' " (citations omitted)). Accordingly, "the pending criminal charges do not, ..., bar Plaintiff's false arrest and false imprisonment claims." Myers v. Municipality of Greene Cty., No. 19-CV-0325, 2020 WL 204296, at *4 (N.D.N.Y. Jan. 14, 2020).

Third, because Plaintiff is awaiting trial and/or the charges remain pending, "his false arrest claim is premature." Hall v. Salaway, No. 20-CV-4651, 2021 WL 826169, at *4 (E.D.N.Y. Mar. 3, 2021); Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003) ("It is well settled in the Second Circuit that in order to prevail on a cause of action for false arrest ..., a plaintiff must prove that the underlying criminal proceeding terminated in his favor." (citation omitted)). As discussed below, the Court stays this action pending resolution of the underlying criminal proceeding.

Fourth, even when considering the merits, the Court finds that Plaintiff's false arrest and false imprisonment claims must be dismissed. It is well-established that "if 'the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest,' the arrest is privileged, and the plaintiff cannot state a claim for false arrest." Sanchez, 2020 WL 1140843, at *6 (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "Officers have probable cause to arrest when they have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed ... a crime.' " Id. (alterations in original) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)). To that extent, "police officers may have had probable cause to arrest if they have acted reasonably, even if they were mistaken." Id. (collecting cases).

*6 Moreover, "[a]n arrest pursuant to a warrant is presumed to be reasonable under the Fourth Amendment because such warrants are issued only after a showing of probable cause." Id. (citing Walczyk v. Rio, 496 F.3d 139, 155-56 (2d Cir. 2007)) (further citation omitted). Plaintiff may rebut the presumption of probable cause "only if he alleges facts suggesting that the arrest warrant was facially invalid or that it was procured through fraud, perjury, or the misrepresentation or falsification of evidence." Id. (quoting Vasquez v. Reilly,

No. 15-CV-9528, 2017 WL 946306, at *7 (S.D.N.Y. Mar. 9, 2017)).

Here, Plaintiff asserts only that Defendants "unlawfully seized me & violated my constitutional rights (4[th] Amendment) by ... depriving me of my liberty of movement, invading my privacy & arresting me for a crime that they thought I had committed." (Compl. at ECF p. 2.) The claims fail because the Complaint fails to allege facts "suggesting that the arrest was not privileged." Sanchez, 2020 WL 1140843, at *6. Thus, the false arrest and false imprisonment claims are DISMISSED WITHOUT PREJUDICE.

## IV. This Action is Stayed Pending Resolution of the Underlying Criminal Case

Because Plaintiff's criminal case is ongoing, as noted above, this action is STAYED pending the conclusion of the underlying criminal proceeding. Wallace, 549 U.S. at 393–94 ("If a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." (citations omitted)); Stegemann, 648 F. App'x at 78 (noting where, as here, the "underlying criminal action is ongoing, the better course might be for the District Court to hold [the plaintiff's] civil action in abeyance until a judgment of conviction has been entered in [the underlying] criminal case"); see also Hall, 2021 WL 826169, at *6 (collecting cases). The Clerk of the Court shall administratively CLOSE this case. Plaintiff is GRANTED leave to request, in writing, that this case be reopened within two (2) weeks after the conclusion of his state court criminal proceeding, if so warranted at that time.

## V. Plaintiff is Granted Leave to File an Amended Complaint Upon Resolution of the Underlying Criminal Case

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). Therefore, Plaintiff is GRANTED leave to to submit an Amended Complaint in accordance with this Order following the conclusion of the on-going criminal proceedings against Plaintiff in state court. See Hall, 2021 WL 826169, at *6 (collecting cases).

In any Amended Complaint, Plaintiff must provide the names of the individual officers he alleges falsely arrested and imprisoned him and allege facts suggesting that the officers did not have probable cause to arrest and imprison him. If Plaintiff was arrested pursuant to a warrant, the Amended Complaint "must allege facts suggesting that the warrant was facially invalid or that it was procured through fraud, perjury, or the misrepresentation or falsification of evidence." Sanchez, 2020 WL 1140843, at *6 (internal quotation marks and citation omitted). "Conclusory assertions that [Plaintiff] was 'illegally' or 'unlawfully' arrested are not sufficient to state a claim under" Section 1983. Id. Finally, if Plaintiff is "subsequently convicted of the charges for which he was arrested, in order to recover damages for an allegedly false arrest, he 'must provide that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]' " Id. (quoting Heck, 512 U.S at 486-87).

CONCLUSION

 **\*7** For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's application to proceed in forma pauperis (ECF No. 2) is GRANTED; and

**IT IS FURTHER ORDERED** that Plaintiff's claims against the HPD are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); and

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants Lt. Horowitz, Sgt. Connolly, Det. Miranda, and Det. Cousins are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); and

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an Amended Complaint. However, this action is STAYED pending the resolution of the underlying criminal case; and

**IT IS FURTHER ORDERED** that Plaintiff is GRANTED leave to request in writing that this case be re-opened within two (2) weeks from the conclusion of the underlying criminal case, if so warranted at that time; and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall (1) administratively close this case and (2) mail a copy of this Order to the pro se Plaintiff; and

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith; therefore, in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, (1962).

**SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 1979077

---

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Griffith v. Sadri, Not Reported in F.Supp.2d (2009)

2009 WL 2524961

KeyCite Yellow Flag - Negative Treatment

Distinguished by   In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,   E.D.N.Y., August 30, 2018

2009 WL 2524961
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jeric GRIFFITH, Plaintiff,

v.

Yas SADRI, et al., Defendants.

No. CV-07-4824 (BMC)(LB).
|
Aug. 14, 2009.

**Attorneys and Law Firms**

Jeric Griffith, Marcy, NY, pro se.

Brian Francolla, Sarah Beth Evans, New York City Law Department, New York, NY, for Defendants.

*ORDER ON REPORT AND RECOMMENDATION*

COGAN, District Judge.

**\*1**  This case is before me on plaintiff's objections to the Report and Recommendation of Magistrate Judge Bloom, in which she denied plaintiff's motion for leave to amend his complaint to add a claim for excessive force as well as to add District Attorney Charles Hynes, the New York City Police Department ("NYPD"), the City of New York and the King's County District Attorney's Office as defendants. For the reasons set forth below, the Report and Recommendation is adopted and plaintiff's motion to amend the complaint is denied.

Under  Fed.R.Civ.P. 72(b)(3),  a  "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  A proper objection requires reference to a specific portion of the magistrate judge's recommendation; if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y.2008)  (quoting  Barratt v.

Joie,  No. 96 CIV 0324, 2002 WL 335014, at \*1 (S.D.N.Y. Mar. 4, 2002)).  Furthermore, even in a de novo review of a party's specific objections, the court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance."  Kennedy v. Adamo, No. 02 CV 01776, 2006 WL 3704784, at \*1 (E.D.N.Y. Sept. 1, 2006)  (quoting  Haynes v. Quality Markets, No. 02-CV-250, 2003 WL 23610575, at \*3 (E.D.N.Y. Sept.22, 2003)).

*BACKGROUND*

Plaintiff filed this  *pro se*  case pursuant to  42 U.S.C. § 1983  alleging false arrest and malicious prosecution. The original complaint states that on February 25, 2006, plaintiff "was arrested inside the Seventh Day Adventist Church" for a robbery of a nearby grocery store and describes the grand jury proceedings and trial. It further alleges that plaintiff suffers from emotional stress as a result of being held for ten months at Rikers Island Correctional Facility, awaiting trial, and that he has suffered pain and mental anguish due to the deliberate indifference and intentional misconduct of defendants.

Plaintiff's proposed amended complaint seeks to add a cause of action for excessive force and assault, alleging that he was "thrown to the ground" and that an officer "placed his hand on plaintiff's chest to check his heart rate." The proposed complaint also seeks to add four additional defendants: District Attorney Charles J. Hynes, the NYPD, Kings County District Attorney's Office and the City of New York as defendants. Defendants opposed the motion to amend on the grounds that plaintiff's amendments fail to set forth any cognizable claims.

By Report and Recommendation dated May 19, 2009, Magistrate Judge Bloom denied plaintiff's motion to amend his complaint as futile, finding that plaintiff's excessive force claim is barred by the statute of limitations and does not "relate back" to any transaction or occurrence alleged in the original complaint. Magistrate Judge Bloom also denied plaintiff's motion to add new defendants, finding that (1) District Attorney Charles Hynes is shielded from liability for the prosecutorial-related decisions of his subordinates; (2) the NYPD and Kings County District Attorney's Office are not separately suable legal entities; and (3) plaintiff failed to allege a custom, policy or practice sufficient to impose municipal liability.

**\*2** Plaintiff now objects to Magistrate Judge Bloom's Report and Recommendation. With respect to the excessive force and assault claim, plaintiff contends that he has had difficulty amending his complaint as a result of his incarceration. Plaintiff further maintains that the excessive force claim is timely because his interrogatory responses indicate that he has suffered "physical, emotional and psychological injuries" and because he described the "assault by officer defendants" in his deposition. Both submissions, plaintiff contends, put defendants on notice before the expiration of the statute of limitations, of the excessive force claim.

Plaintiff evidently concedes that the New York Police Department and the Kings County District Attorney's Office are non-suable entities but reiterates his contention that District Attorney Hynes is a principal and subject to the alleged criminal acts of his agents or subordinates. Plaintiff asserts that the cognizable official custom, policy or practice of the City of New York is to prosecute "anyone who is indicted whether there is real probable cause or not."

Defendants have not opposed plaintiff's objections.

### DISCUSSION

### I. Standard for Futility of Amendment

The Magistrate Judge correctly recognized that, pursuant to Rule 15(a)(2), leave to amend should be freely given, but the court may deny leave to amend in cases of futility. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 91-92 (2d Cir.2003). Case law within the Second Circuit is clear that if, upon amendment, a Rule 12(b) motion would have to be granted, the proposed amendment should be deemed futile. *See Holt v. Katy Industries, Inc.,* 71 F.R.D. 424, 427 (S.D.N.Y.1976) ("amendments to a complaint may be denied if the proposed changes fail to state a claim on which relief can be granted.") (citing *Vine v. Beneficial Finance Co.,* 374 F.2d 627, 636-7 (2d Cir.1967); *Billy Baxter, Inc. v. The Coca-Cola Co., et al.,* 47 F.R.D. 345, 346 (S.D.N.Y.1969), *aff'd,* 431 F.2d 183 (2d Cir.1970)); *Ganthier v. North Shore-Long Island Jewish Health Sys.,* 298 F.Supp.2d 342, 350 (E.D.N.Y.2004) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.") (quoting *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999)). To hold otherwise would simply engender needless duplicate litigation, first on the motion to amend and then again on a motion to dismiss. Thus, where the proposed amendment is attacked as futile because it is legally insufficient, the Court should determine futility, in the first instance, by assessing the legal sufficiency of the proposed amendment. For this analysis, a *pro se* litigant's complaint must be read liberally and the "freely given" leave to amend standard must be applied with particular force. *Pangburn v. Culbertson,* 200 F.3d 275, 283 (2d Cir.1999).

### II. Plaintiff's New Claim for Excessive Force and Assault

**\*3** Plaintiff's new claim for excessive force and assault is futile, as it would be subject to immediate dismissal as untimely. The amended complaint alleges that during the February 25, 2006 arrest, plaintiff was thrown to the floor and that an officer "placed his hand on plaintiff's chest to check his heart rate." The Magistrate Judge correctly recognized that the applicable three year statute of limitations for an excessive force claim accrues at the time of the use of force. *Perez v. Cuomo,* No. 09-CV-1109 (SLT), 2009 WL 1046137, at \*6 (E.D.N.Y. Apr.17, 2009). The limitations period for filing an excessive force claim based on plaintiff's February 25, 2006 arrest expired on February 25, 2009. The Eastern District of New York Pro Se Office received plaintiff's proposed amended complaint in May 2009-more than two months after the statute of limitations had run. Plaintiff's excessive force claim is thus barred by the statute of limitations.

To resist this result, plaintiff, who is currently incarcerated, argues that he has had inadequate access to a typewriter and a law library and that he has been moved "from one jail to the next" over the past few months. In effect, plaintiff argues for an equitable toll of the statute of limitations.

However, equitable tolling is permitted only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Haghpassand v. Reuters America Inc.,* 120 Fed. Appx. 859, 862, No. 04-2463, 2005 WL 195092 (2d Cir. Jan.28, 2005); *see also Walker v. Jastremski,* 430 F.3d 560 (2d Cir.2005) (declining to equitably toll the limitations period for a prisoner's § 1983 claim because the case did not present "extraordinary circumstances"). Plaintiff's described difficulties do not constitute the "extraordinary circumstances" sufficient to justify equitable tolling. *See, e.g., Cross v. McGinnis,* No. 05 Civ. 504, 2006 WL 1788955, at \*5-6 (S.D.N.Y. June 28, 2006) ("A petitioner's restricted access to library facilities does not merit equitable tolling"); *Asencio v. Senkowski,* 00 Civ. 6418, 2000 WL 1760908, at \*1-2 (S.D.N.Y. Nov.30, 2000) ("hardships associated with

2009 WL 2524961

prison conditions do not constitute the rare circumstances under which equitable tolling is granted.").

A slightly closer question is plaintiff's objection-supported by the letter annexed to his objection as Exhibit B-that he inquired of the Clerk of the Court of how he could amend his complaint on February 4, 2009, before the expiration of the statute of limitations. [1] That inquiry, however, does not extend the limitations period for two reasons.

[1]     As noted above, ordinarily a district court will refuse to consider evidentiary material that could have been, but was not presented to the Magistrate Judge in the first instance. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994). However, I will assume, for purposes of addressing these objections, that since he is appearing *pro se,* plaintiff was unaware of the statute of limitations until the Magistrate issued her Report and Recommendation. Thus, plaintiff would not have presented the letter sent to the Clerk of the Court, in the first instance, to Magistrate Judge Bloom.

First, it is well-settled that unfamiliarity with the law or legal procedure is not sufficiently extraordinary to toll the statute of limitations. *Fennel v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1997) (excuse of "being uneducated and not familiar with legal research and legal procedures" did not warrant equitable tolling because it could be made by "virtually all inmates.").

**\*4**  Second-and perhaps more probative in this equitable balancing-any plaintiff seeking to toll the statute of limitations must show reasonable diligence in asserting his claims, in addition to exceptional or extraordinary circumstances. Plaintiff waited over a year and eight months after his complaint had been filed and after the close of discovery to first inquire about amending his complaint. He waited two years and eleven months after the incident complained of to first allege the excessive use of force and he waited over three months after his inquiry to the Clerk of the Court to file his motion to amend the complaint. Plaintiff did not exercise reasonable diligence.

Magistrate Judge Bloom's determination that plaintiff's excessive force claim does not "relate back" to his earlier complaint is also correct. The relation back test, of course, is not one of temporal proximity but rather of adequate notice to

defendants. *Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.1975). Thus, it is of no moment that the arrest complained of in the original complaint occurred at the same time as the newly alleged excessive force. As the Second Circuit has previously held in a similar context, when, even under the most liberal reading, "not a word in the complaint even suggested a claim of physical assault," the defendants cannot be said to have been on notice of a claim for excessive force. *Id* . The operational facts set forth in the original complaint assert an illegal arrest and prosecution for lack of probable cause. There is not the slightest intimation that the arrest was conducted with excessive force.

Plaintiff's objection that his interrogatory responses and deposition testimony put defendant's on adequate notice of the excessive force claim is unavailing. As the Magistrate Judge recognized, the inquiry under Rule 15 is whether adequate notice has been given to the opposing party *in the original pleading.* *Slayton v. American Express Corp,* 460 F.3d 215, 228 (2d Cir.2006) (emphasis added).

Therefore, plaintiff's motion to amend the complaint to add an excessive force cause of action is denied as futile.

### III. Plaintiff's Proposed New Defendants

The Report and Recommendation correctly concludes that, as a matter of law, District Attorney Charles J. Hynes, the New York Police Department, Kings County District Attorney's Office and the City of New York cannot be sued in this action. Plaintiff's objections are reiterations of his original argument and have not sufficiently countered or cured any of the legal infirmities identified in the Report and Recommendation. Allowing plaintiff to add these defendants at this time would be futile. Therefore, plaintiff's motion to amend his complaint is denied.

*CONCLUSION*

The Report and Recommendation is adopted and plaintiff's motion to amend his complaint is denied.

**SO ORDERED.**

JERIC GRIFFITH, Plaintiff,

-against-

ASSISTANT DISTRICT ATTORNEY SADRI; POLICE OFFICER (PO) FREDDY LOPEZ; PO KATHY PAPPAS; PO MATHEW GALLAGER; PO JIANYUE GUO; PO FURIA; SERGEANT DANIEL HEANEY; SERGEANT CHRIS CORREA; DETECTIVE KEITH MANGAN; MS. AMY DORSEY; PO ERIC MERIZALDE; LIEUTENANT SCHLOEMAN; PO BAEZ; PO RYAN; PO ZAJAC; PO PERAZZO; CAPTAIN SCOLARO; CAPTAIN NIKAS; SERGEANT JESKE; DETECTIVE CALLAGHAN; PO CHADWICK; PO FAZAL; and PO GARCIA, individually and in their official capacities, Defendants.

### REPORT & RECOMMENDATION DENYING PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

BLOOM, United States Magistrate Judge.

 **\*5**  Plaintiff filed this *pro se* case on November 16, 2007, pursuant to 42 U.S.C. § 1983, alleging defendants falsely arrested and imprisoned him, maliciously prosecuted him and defamed him.[1]  Complaint; Document 1. Plaintiff names Assistant District Attorney Sadri and a number of officers from the 78th Precinct as defendants.[2]  Complaint at 1. Defendants filed answers, documents 17, 22, 44, and the parties conducted discovery.[3]  Plaintiff now moves to amend the complaint to include an excessive force claim as well as to add District Attorney Charles Hynes, the New York City Police Department ("NYPD"), the City of New York and the King's County District Attorney's Office as defendants.[4] Proposed Amended Complaint; Document 94-2. Defendants oppose plaintiff's motion to amend. Document 95. Defendants served and filed their motion for summary judgment on May 11, 2009. Document 96. For the reasons stated below, it is respectfully recommended pursuant to 28 U.S.C. § 636(b) that plaintiff's motion to amend should be denied.

[1]     Plaintiff's complaint also alleges that defendants violated his 4th, 6th and 14th Amendment rights. Complaint at 6.

[2]     By Order dated November 28, 2007, the claims against defendants Small, Poteau and Parish were dismissed. Document 3.

[3]     The Court's December 19, 2008 Order extended the deadline for the parties to complete discovery to February 5, 2009. By endorsed Order dated March

9, 2009, the deadline was extended to March 30, 2009 for the limited purpose of providing plaintiff with his criminal trial transcript. Documents 76, 87.

[4]     Plaintiff summarily states that his 4th, 5th, 8th and 14th Amendment rights were violated without any additional supporting statements. Proposed Complaint at 10.

### DISCUSSION

### I. Standard for Motion to Amend
Under Rule 15(a), "[a] party may amend its pleading once as a matter of course ... before being served with a responsive pleading.... In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). A motion for leave to amend should be denied only for good reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (U.S.1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002); *see also Crippen v. Town of Hempstead,* No. 07-CV-3478, 2009 U.S. Dist. LEXIS 24820, 2009 WL 803117 (E.D.N.Y. Mar. 25, 2009) ("The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b) (6) motion to dismiss-namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted.") Moreover, a pro se plaintiff's complaint must be read liberally and interpreted as raising the strongest arguments it suggests. See *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Daniel v. Safir,* 175 F.Supp.2d 474, 479 (E.D.N.Y.2001) (citing *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997) (*pro se* complaints are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.)

### II. Plaintiff's Proposed Excessive Force Claim
 **\*6**  Plaintiff's proposed amended complaint alleges that on February 25, 2006 he was thrown on the floor and that an officer "placed his hand on plaintiff's chest to check his heart

rate." Proposed Amended Complaint at 6. Defendants argue that plaintiff's motion for leave to amend should be denied as futile because plaintiff's excessive force claim would be barred by the applicable statute of limitations. Document 95 at 1-2. The Court agrees. *See Diallo v. Williams,* No. 04 Civ. 4556(SHS)(DF), 2006 WL 156158, 2 (S.D.N.Y. January 20, 2006) (denying plaintiff's motion to amend to include 42 U.S.C § 1983 claims as futile where the claims would be barred by the statute of limitations); *see also Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994) (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations). The three year statute of limitations for an excessive force claim accrues at the time the use of force occurred. *Jefferson v. Kelly,* No. 06-CV-6616 (NGG)(LB), 2008 WL 1840767 at *3 (E.D.N.Y. Apr. 22, 2008) (citing *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980)); *see also Cotto v. Pabon,* No. 07 Civ. 7656(AJP), 2008 WL 4962986, 10 (S.D.N.Y. November 20, 2008) (plaintiff's excessive force claim accrued at the time of his arrest). The three year statute of limitations period for plaintiff's proposed excessive force claim based on the February 25, 2006 incident expired on February 25, 2009. Therefore plaintiff's excessive force claim is untimely.

However, where an amended complaint asserts a claim that would otherwise be untimely, it may "relate back" to the earlier complaint if it "arises out of the same transaction or occurrence as the one that the plaintiff originally alleged." *Ruiz v. Suffolk County Sheriff's Dept,* No. 03 CV 3545(DLI) (ETB), 2008 WL 4516222, 5 (E.D.N.Y. October 2, 2008) (citing *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998)). The central inquiry under Rule 15 is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* (quoting *Slayton v. American Express Corp.,* 460 U.S. 215, 228 (2d Cir.2006)) (internal citations omitted). Plaintiff's original complaint states that "plaintiff was arrested inside the Seventh Day Adventist church" and describes the grand jury proceedings and trial. Liberally construing plaintiff's complaint, plaintiff fails to allege any facts regarding excessive force that would put defendants on notice of an excessive force claim. See *Fleming v. Department of Justice,* No. 90 Civ. 0896(CPS), 1993 WL 16117, 2 (E.D.N.Y. January 20, 1993) (although "the proffered amendment allege[s] facts that occurred on the same day[ ] as the alleged facts made in the original complaint, there is no 'factual nexus' between the new claims of ...

excessive force and ... illegal searches.") Furthermore, "an amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged." *Lederman v. Giuliani,* No. 98 Civ.2024(LMM), 2002 WL 31357810, 2 (S.D.N.Y. October 17, 2002) (citing *Pruiss v. Bosse,* 912 F.Supp. 104, 106 (S.D.N.Y.1996)). Plaintiff's allegation that some unnamed defendant threw him to the floor and touched his chest are new facts that do not relate back to plaintiff's original false arrest, malicious prosecution and defamation claims. Therefore, plaintiff's motion to amend to add a proposed excessive force claim should be denied as futile.

### III. Plaintiff's Proposed New Defendants

**\*7** Plaintiff's proposed amended complaint alleges that the "custom of being able to prosecute a defendant just because the grand jury indicted is a flawed one." Proposed Complaint at 9. Plaintiff states, "Sadri was able to get a grand jury to indict even though no proof leaning toward plaintiffs guilt was provided and even though defendant Sadri knew she could not succeed in her prosecution, she was able to continue the prosecution following a custom and policy allowed and practiced by her supervisor['s] office[ ] and the City of New York." *Id.* Plaintiff further alleges that "District Attorney Charles J. Hynes is responsible for the wrong doings of those employed in his office and the Kings County District Attorney's Office is liable for his actions and failure to train and supervise his underlings." *Id.* Plaintiff also alleges that the NYPD is responsible and liable for its employees' actions and defendant New York City is responsible for its agencies. *Id.* at 7.

### A. District Attorney Charles J. Hynes

In lawsuits brought pursuant to 42 U.S.C. § 1983, prosecutors are absolutely immune from liability for prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Van De Kamp et al. v. Goldstein,* 555 U.S. ----, 129 S.Ct. 855, 859-60, 172 L.Ed.2d 706 (Jan. 26, 2009) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128(1976)). While plaintiff states that District Attorney Charles J. Hynes is responsible for the wrong doings of those employed in his office and that his constitutional rights were violated when defendant Sadri prosecuted him knowing she could not succeed in her prosecution, absolute immunity shields a "prosecutor's decision to bring an indictment, whether he has probable cause or not." *Coleman v. City of New York,* No. 08 Civ. 5276(DLI)(LB), 2009 WL 909742, 2 (E.D.N.Y. April 1,

2009) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 274 n. 5, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149 (2d Cir.1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993) (the decision whether or not to commence a prosecution is protected by absolute prosecutorial immunity). "To the extent the supervision or policies concern the prosecutorial decisions for which the ADAs have absolute immunity, then those derivative allegations against supervisors must also be dismissed on the ground that the supervising district attorneys have absolute immunity for the prosecution-related decisions of their subordinates and because Section 1983 supervisory liability depends upon the existence of an underlying constitutional violation." *Bodie v. Morgenthau,* 342 F.Supp.2d 193, 205 (S.D.N.Y.2004); *see also Pinaud v. County of Suffolk.* 798 F.Supp. 913, 918 (E.D.N.Y.1992), aff'd in part, rev'd in part, 52 F.3d 1139 (2d Cir.1995) ("[W]hen the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity.") Plaintiff's proposed complaint fails to state a claim against District Attorney Charles J. Hynes and therefore plaintiff's motion to amend should be denied as futile.

**B. New York Police Department and the Kings County District Attorney's Office**

**\*8** While under *Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be subject to suit pursuant to 42 U.S .C. § 1983, a police department, which is an administrative arm of a municipality, does not have a legal identity separate and apart from the municipality and cannot sue or be sued, *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002). *See also Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007) (The New York City Police Department is not a suable entity); *Wray v. City of New York,* 340 F.Supp.2d 291, 303 (E.D.N.Y.2004) (quoting N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")); *Walker v. U.S. Marshals,* No. 08 Civ. 959(JG)(AKT), 2009 WL 261527, 2 (E.D.N.Y. February 4, 2009) (a municipal police department is not a suable entity "because it is a sub-unit or agency of the municipal government, which fulfills the municipality's policing function.") Similarly, a district attorney's office is not a separate legal entity capable of being

sued pursuant to § 1983. *McCray v. City of New York,* Nos. 03 Civ. 9685(DAB), 03 Civ. 9974(DAB), 03 Civ. 10080(DAB), 2007 WL 4352748 at \*26 (S.D.N.Y.2007) (citing *Michels v. Greenwood Lake Police Dept.,* 387 F.Supp.2d 361, 367 (S.D.N.Y.2005)). Therefore, plaintiff's motion to amend his complaint to add the defendants NYPD and Kings County District Attorney's Office should be denied as futile.

**C. City of New York**

In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy or practice. *See Monell,* 436 U.S. 658 at 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611. Plaintiff alleges that the grand jury system is a "flawed one" and defendant Sadri was able to "succeed in her prosecution," and obtain an indictment without proof after "following a custom and policy allowed and practiced by her supervisor [']s." However, these conclusory statements fail to allege a custom, policy or practice that deprived him of his constitutional rights. Therefore, plaintiff's motion to amend the complaint to add the City of New York should be denied. *See Davis v. City of New York,* No. 07 Civ. 1395(RPP), 2008 WL 2511734 at \*6 (S.D.N.Y. June 19, 2008) (holding that plaintiff failed to sufficiently plead municipal liability because "conclusory allegations that a municipality failed to train and supervise its employees is insufficient to state a *Monell* claim"); *see also Oparaji v. City of New York,* No. 96 Civ. 6233, 1997 WL 139160 at \*3 (E.D.N.Y. Mar.21, 1997) (granting defendant's motion to dismiss because plaintiff's *Monell* claim "[did] not contain a single fact in support of [the] conclusory allegation").

Moreover, even if plaintiff's proposed complaint alleged a constitutional violation, a single incident of unconstitutional activity is insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability. *Santiago v. C.O. Campisi Shield,* F.Supp.2d 665, 675-676 (S.D.N.Y.2000) (citing *City of Oklahoma City v. Turtle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Plaintiff's proposed amended complaint fails to state a claim against the City of New York and therefore his motion to amend should be denied as futile.

**CONCLUSION**

Griffith v. Sadri, Not Reported in F.Supp.2d (2009)

2009 WL 2524961

**\*9** Accordingly, plaintiff's motion to amend the complaint should be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Fed.R.Civ.P., the parties shall have ten days from service of this Report to file written objectives. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital Dist. Phyisicians' Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2524961

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**INTRODUCTION**

**\*1** Plaintiff Shariff Abbas commenced this *pro se* action
pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C.
§§ 1346(b), 2671 et seq., and other federal laws, alleging
violation of his rights while detained at the Buffalo Federal
Detention Facility ("BFDF") in Batavia, the Albany County
Jail and the Perry County Correctional Center ("PCCC") in
Uniontown, Alabama. Currently before the Court for review
pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended
complaint [1], submitted in response to the Court's Order filed
on August 16, 2013 ("August 16 Order") (Docket No. 6),
which reviewed plaintiff's original complaint (Docket No. 4),
dismissed several of the claims asserted therein, and granted
plaintiff leave to file an amended complaint. For the reasons
set forth below, plaintiff's FTCA claims against the United
States related to his treatment at the BFDF may proceed and
his remaining claims will be dismissed.

[1]     Plaintiff's amended complaint is accompanied
    by two voluminous bound volumes of exhibits
    captioned "Exhibit's [sic] Part 1", containing a
    Table of Contents and exhibits 1–18 and "Exhibit
    Part 2", containing a Table of Contents and
    exhibits 19–40. Given the voluminous nature of
    the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would
make scanning them very difficult, the Court has
not required the Clerk's Office to scan them into the
court's electronic filing system. They will instead
be maintained in paper form in a separate file in the
Clerk's Office. *See* note to Docket No. 6.

**DISCUSSION**

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's
FTCA claims stemming from his detention at the Albany
County Jail and the PCCC be dismissed; that plaintiff be
granted leave to file an amended complaint adding *Bivens* [2]
or other federal claims against individual deportation officers
and other personnel at BFDF who he alleges violated his
rights; and that in the even he failed to timely file an
amended complaint as directed, the Court would issue an
Order directing service of the complaint upon the United
States as the sole defendant to his medical malpractice claims
brought under the FTCA. (Docket No. 5).

[2]     *Bivens v. Six Unknown Named Agents of Federal
    Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999,
    29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA
claims, plaintiffs original complaint asserted a variety
of violations of his constitutional rights by individual
deportation officers and other personnel during his periods
of detention at BFDF and that these claims would be
actionable against individual defendants under the *Bivens*
doctrine, which allows a plaintiff to pursue constitutional
claims against federal officials in their individual capacities
for actions taken under color of federal law. *See Lombardi
v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an
individual 'has been deprived of a constitutional right by
a federal agent acting under color of federal authority,' the
individual may bring a so-called *Bivens* action for damages
against that federal agent in an individual capacity, provided
that Congress has not forbidden such an action and that the
situation presents 'no special factors counseling hesitation in
the absence of affirmative action by Congress.' ") (internal
citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491,
496 (2d Cir.2006). The Court determined, however, that the
*Bivens* claims could not proceed because of plaintiff's failure
to name the individual custody officers and other officials
who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

**\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION", set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3    Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4    Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules

of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption to the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) for failure to state a claim on which relief can be granted.

B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiff's original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v, Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]   As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]   As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2375814

2007 WL 2375814
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Vidal WHITLEY, Plaintiff,

v.

Major KRINSER, Sgt. Robin Brown, Captain Winters,
Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal
Carlo, Lt. Santillo, Sgt. Garcia, Major Kasacey,
Corporal Peck, and Deputy Galling, Defendants.

No. 06-CV-0575F.
|
Aug. 15, 2007.

**Attorneys and Law Firms**

Vidal Whitley, Willard, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**INTRODUCTION**

*\*1* By an Order dated February 8, 2007, plaintiff *pro se* Vidal Whitley was granted permission to file a second amended complaint in this action pursuant to 42 U.S.C. § 1983 to specifically address issues relating to defendants Kasacey, Krinser and Peck. For the reasons stated below, plaintiff's second amended complaint is dismissed and the amended complaint is allowed to go forward at this stage against all named defendants except as to defendants Krinser, Kasacey and Peck.

**DISCUSSION**

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action "(ii) fails to state a claim upon which relief may be granted." Based on its evaluation of the complaint, the Court finds that plaintiff's claims against defendants Krinser, Kasacey and Peck must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they fail to state a claim upon which relief

may be granted. Despite direction to specify what Krinser, Kasacey and Peck were responsible for, plaintiff's second amended complaint does not allege sufficient facts to state claims against Krinser, Kasacey and Peck.

In addition, plaintiff was directed that his second amended complaint "should name in the caption all of the people plaintiff wishes to hold responsible for each violation. Plaintiff has alleged that people who are not named in the caption were responsible for violation his rights. However, if these people are not also named in the caption of the second amended complaint, they will not be defendants in the case." (Docket No. 11.) Because plaintiff has not named any additional defendants in the second amended complaint, has not included the allegations against the remaining defendants named in his amended complaint, and has failed to state a claim against Krinser, Kasacey and Peck, the second amended complaint is dismissed in its entirety. However, because of plaintiff's *pro se* status and his minimal literacy, the Court will deem the amended complaint the operative pleading in this case and allow it to proceed against all named defendants except Krinser, Kasacey and Peck.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against defendants Krinser, Kasacey and Peck are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and the amended complaint shall be served on the remaining defendants set forth in the caption above.

**ORDER**

IT HEREBY IS ORDERED, that the claims against Krinser, Kasacey and Peck are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B); and,

FURTHER, the Clerk of the Court is directed to correct the docket to reflect that Sgt. Robin Brown, Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling are defendants in this action; and,

FURTHER, the Clerk of the Court is directed to cause the U.S. Marshal to serve the amended complaint (Docket No. 10) and this Order upon the remaining defendants, Sgt. Robin Brown, Captain Winters, Corporal Conklin, Deputy Johnson, Lt.

Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy
Galling.

**\*2**  SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2375814

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16540705
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Cyril CURTIS, Plaintiff,

v.

ROCKLAND COUNTY, Officer Phillip Fantasia,
Officer John Casey, Officer Raymond Lund, Officer
Michael Vigiletti, Investigator Joe Alvarez, Defendants.

21-CV-04294 (PMH)
|
Signed October 28, 2022

**Attorneys and Law Firms**

Cyril Curtis, Marcy, NY, Pro Se.

Michael A. Miranda, Richard Brian Epstein, Miranda Slone
Sklarin Verveniotis, LLP, Mineola, NY, for Defendant Officer
Phillip Fantasia.

Larraine Susan Feiden, County of Rockland, New City, NY,
Patrick John Fischer, Office of the County Attorney New City,
NY, for Defendants Officer John Casey, Rockland County.

Kenneth Ethan Pitcoff, Frank Humphrey Foster, Morris
Duffy Alonso & Faley, New York, NY, Marissa Padovano,
New York City Law Department, New York, NY, for
Defendants Officer Raymond Lund, Officer Michael
Vigiletti, Investigator Joe Alvarez.

## MEMORANDUM OPINION AND ORDER

PHILIP M. HALPERN, United States District Judge:

**\*1** Cyril Curtis ("Plaintiff"), proceeding *pro se* and *in
forma pauperis*, brings this action pursuant to 42 U.S.C.
§ 1983 against Rockland County, Investigator Joe Alvarez
("Alvarez"), Officer John Casey ("Casey"), Officer Phillip
Fantasia ("Fantasia"), Officer Raymond Lund ("Lund"),
and Officer Michael Vigiletti ("Vigiletti" and collectively,
"Defendants"). Plaintiff alleges that Defendants violated his
constitutional rights during the July 3, 2018 search of his
home, his six-hour pretrial detention on the same date, and his
subsequent imprisonment. (Doc. 9, "FAC").

For the reasons set forth below, Defendants' motions to
dismiss are GRANTED.

## BACKGROUND

### A. **Procedural Background**

Plaintiff filed this action on May 10, 2021. (Doc. 2). The
original Complaint named Rockland County Drug Task
Force, Rockland County Office of the Sheriff Department,
Sheriff Louis Falco III, Officer Phillip Fantasia, Officer John
Casey, John Doe 1, John Doe 2, John Doe 3, and John Doe
4 as Defendants. (*Id.*). On June 14, 2021, the Court issued
a *Valentin* Order which dismissed Plaintiff's claims against
Rockland County Drug Task Force and Rockland County
Office of the Sheriff Department and added Rockland
County as a Defendant. (Doc. 6). [1] The Court further ordered
the Rockland County Law Department to identify the John
Doe defendants. (*Id.* at 3). On July 9, 2021, Plaintiff filed his
First Amended Complaint ("FAC"), which dropped Sheriff
Louis Falco III as a Defendant. [2] (Doc. 9). On August 12,
2021, Rockland County filed a letter in response to the Court's
June 14, 2021 *Valentin* Order identifying John Doe 1 as
Officer Raymond Lund, John Doe 2 as Officer John Casey,
John Doe 3 as Officer Michael Vigiletti, and Investigator
Joe Alvarez as a Defendant. (Doc. 13). On August 13, 2021, the
Court ordered the substitution of the individuals identified
in Rockland County's August 12, 2021 letter and terminated
Sheriff Louis Falco III as a defendant. (Doc. 14).

[1]    Rockland County Drug Task Force and Rockland
       County Office of the Sheriff Department were
       dismissed as Defendants because neither entity
       qualified as a "person" within the meaning of 42
       U.S.C. 1983. (Doc. 6 at 2).

[2]    Plaintiff's First Amended Complaint was timely
       filed within 21 days of service of the original
       Complaint pursuant to Fed. R. Civ. P. 15(a).

On August 31, 2021, Plaintiff filed an unauthorized Second
Amended Complaint ("SAC"). (Doc. 18). [3] The caption of
the SAC referred to four "John Doe" defendants that had
already been identified by Rockland County and substituted
by the Court's August 13, 2021 Order. (*See* Doc. 14).
Accordingly, on September 16, 2021, the Court issued an
Order once again terminating the John Doe defendants as
parties and restoring Officer Lund, Officer Vigiletti, and
Investigator Alvarez as parties. (Doc. 29). Accordingly,
Plaintiff's claims in the FAC, as modified by the Court's

Orders as described above, are pressed against Rockland County, Lund, Fantasia, Casey, Vigiletti, and Alvarez.

[3]   Plaintiff did not file a motion for leave to amend the FAC pursuant to Fed. R. Civ. P. 15(a)(2). The Court therefore strikes Plaintiff's SAC as untimely and unauthorized and construes the FAC as the operative pleading for the purposes of Defendants' motions to dismiss. *See* Ko v. JP Morgan Chase Bank, N.A., 730 F. App'x 62, 64 (2d Cir. 2018) (affirming the striking of an unauthorized amended complaint where plaintiff did not seek leave to amend).

**\*2**  The Court granted Defendants leave to file motions to dismiss during the pre-motion conference on March 1, 2022, and ordered that Defendants file joint moving and reply briefs in support of their motions. (Doc. 50). On March 29, 2022, Defendants filed their motions to dismiss and joint moving brief. (Doc. 51; Doc. 52; Doc. 53; Doc. 54 ("Defs.' Br."); Doc. 55). Plaintiff filed his opposition brief on May 3, 2022. (Doc. 56, "Opp. Br."). Defendants filed their joint reply brief on May 16, 2022. (Doc. 59, "Reply Br.").

**B. Factual Background**

Plaintiff alleges that, on July 3, 2018, he was pulled over by Fantasia, Casey, and Lund. (FAC ¶¶ 1-3). Fantasia, Casey, and Lund, during the stop, informed Plaintiff that they had a search warrant for his person, vehicle, and home and provided Plaintiff with a copy of the warrant to search for drugs and drug paraphernalia. (*Id.* ¶¶ 3-5). Plaintiff was handcuffed after Defendants searched his vehicle and was transported to the police station in Haverstraw, New York. (*Id.* ¶ 8). Upon arrival at the police station in Haverstraw, Alvarez and Vigiletti placed Plaintiff in a holding cell "for 6 hours with no phone calls and nothing to eat or drink." (*Id.* ¶ 9).

Plaintiff alleges that, while he was held at the Haverstraw police station, Fantasia, Casey, and Lund provided his wife with a copy of the search warrant and searched Plaintiff's home, but did not find any drugs or drug paraphernalia. (*Id.* ¶¶ 10-13). During the search of Plaintiff's home, Fantasia, Casey, and Lund located and broke open a locked safe which contained an "unloaded 9MM [Smith & Wesson] handgun" and also found "the bullets for [that] handgun inside a case" under Plaintiff's bed. (*Id.* ¶¶ 14-15). After finding the handgun and ammunition, Fantasia and Casey left Plaintiff's home while Lund stayed behind. (*Id.* ¶ 15). Fantasia and Casey returned five hours later with a new warrant, which allowed

for search and seizure of "[f]irearms, handguns, including 9mm handgun, bullets, ammunition, magazine, weapons, and marihuana." (*Id.* ¶ 19, Ex. B). Casey and Fantasia provided Plaintiff's wife with a copy of the second warrant. (*Id.* ¶ 19). Plaintiff alleges that Defendants Casey and Fantasia "forged a Judge['s] signature" or otherwise "[a]lter[ed] and tamper[ed]" with the second warrant. (*Id.* ¶ 22).

Following the search of his home, Plaintiff was charged, and subsequently convicted for violation of New York Penal Code § 265.03, Criminal Possession of a Weapon in the Second Degree.[4]  Plaintiff is currently serving out his sentence at Marcy Correctional Facility. (FAC at 2).

[4]   *See* New York Dep't of Corr. and Cmty. Supervision ("DOCCS") Incarcerated Lookup, available at https://nysdoccslookup.doccs.ny.gov/ (information obtained for DIN# 19-A-0921). The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information. See Williams v. Novoa, No. 19-CV-11545, 2022 WL 161479, at \*1 (S.D.N.Y. Jan. 18, 2022) (taking judicial notice of plaintiff's DOCCS inmate lookup information); Johnson v. City of New York, No. 15-CV-8195, 2017 WL 2312924, at \*2 n.3 (S.D.N.Y. May 26, 2017) (collecting cases). The corresponding conviction and biographical information listed in DOCCS's public records match the information provided by Plaintiff in his pleadings. (Doc. 9 at 2 (identifying Plaintiff's DOCCS Department ID Number as 19-A-0921), ¶ 21 (alleging that Plaintiff was charged with "[c]riminal [p]ossession of a weapon in the second degree").

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**\*3** "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The presumption of truth, however, " 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). The Court has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"Even in a *pro se* case, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris*, 572 F.3d at 72 (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170.

## ANALYSIS

Plaintiff seeks relief under 42 U.S.C. § 1983. (FAC at 1). That statute provides, in pertinent part, that "[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983. "[T]his language ... creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at \*6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at \*3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). Reading the pleading broadly and interpreting the allegations to raise the strongest arguments they suggest, Plaintiff asserts claims for relief pursuant to 42 U.S.C. § 1983 for unlawful search and seizure, deliberate indifference to medial needs, and unlawful denial of a telephone call.

## I. **Statute of Limitations**
This action concerns Plaintiff's arrest and the execution of search warrants at his vehicle and home on July 3, 2018. The statute of limitations governing 42 U.S.C. § 1983 claims in New York is three years. *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Plaintiff's complaint was not amended to name Defendants Lund, Vigiletti, and Alvarez until August 13, 2021, more than three years after the events giving rise to his claims.

An otherwise untimely amendment will survive if it is deemed to "relate back" to the original complaint. *See* Fed. R. Civ. P. 15(c)(1); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2021 WL 2894834, at \*3 (S.D.N.Y. July 9, 2021). The federal standard for relation back when an amendment to the pleadings adds a party to an action, set forth in Rule 15, provides, in relevant part, that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment changes the party or the naming of the party against whom a claim is asserted...." Fed. R. Civ. P. 15(c)(1)(C). A lack of knowledge about a defendant's identity, however, cannot be characterized as a "mistake of identity" for purposes of Rule 15(c)(1)(C). *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013); *see also Cotto v. City of New York*, 803 F. Appx. 500, 503 (2d Cir. 2020). As a result, Rule 15(c)(1)(C) "preclude[s] relation back" in cases like this one, where a plaintiff names John Doe defendants because he does not know the identity of the defendants until the statute of limitations has run. *Id.* (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)).

**\*4** An amendment may also relate back, however, when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). A plaintiff bringing a § 1983 claim can therefore rely on New York's relation back rules to substitute a named defendant for a John Doe defendant. *See Hogan*, 738 F.3d at 518–19; N.Y. CPLR § 1024. For the amendment to relate back under New York law, a plaintiff must satisfy two requirements. *Hogan*, 738

F.3d at 519. First, the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and second, "the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Id.* (citation omitted).

Here, Plaintiff cannot satisfy the first requirement. Despite the events giving rise to Plaintiff's claims occurring in 2018, " 'Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed,' waiting until the statute of limitations had nearly run to file his complaint." *JCG v. Ercole*, No. 11-CV-06844, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (quoting *Williams v. United States*, No. 07-CV-03018, 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010)), *adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014). In that time, he could have served discovery demands upon the known parties, sought disclosures pursuant to a Freedom of Information Law ("FOIL") request, or written letters to the Attorney General's Office. *Cf. Hogan*, 738 F.3d at 519 (plaintiff met first requirement under § 1024 in that he "diligently sought to identify the "John Doe defendants" by submitting "multiple discovery requests to the Attorney General's office"); *Mabry v. New York City Dept. of Corrections*, No. 05-CV-08133, 2008 WL 619003, at *6 (S.D.N.Y. March 7, 2008) (allowing relation-back where plaintiff's first complaint was well within statute of limitations and she "aggressively sought the identities of the defendants"). Filing suit weeks before the statute of limitations expires, without more, is insufficient to show due diligence under § 1024. *See, e.g., Vasconcellos v. City of New York*, No. 12-CV-08445, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) (declining to apply § 1024 because "Vasconcellos did nothing to exercise due diligence prior to the running of the statute-or, for that matter, after it ran"); *Jones v. City of New York*, 571 F. Supp. 3d 118, 131 (S.D.N.Y. 2021) (holding that an incarcerated *pro se* Plaintiff did not exercise due diligence where he failed to take any actions "to uncover the John and Jane Doe defendants' identities prior to the expiration of the limitations period"); *Liverpool v. Davis*, 442 F. Supp. 3d 714, 727 (S.D.N.Y. 2020) (same).

In light of Plaintiff's failure to exhibit diligence in attempting to ascertain the identity of the John Doe defendants, the claims against Defendants Lund, Vigiletti, and Alvarez do not relate back to the original Complaint and are, therefore, barred by the statute of limitations. Accordingly, Defendants Lund, Vigiletti, and Alvarez are dismissed from this action.

## II. Unlawful Search and Seizure Claim

Plaintiff alleges that the July 3, 2018 search of his home and subsequent seizure of a firearm was conducted pursuant to an invalid warrant in violation of his Fourth Amendment rights. (FAC ¶¶ 13-16). The Supreme Court's decision in *Heck* "precludes the use of § 1983 suits for damages that necessarily have the effect of challenging existing state or federal criminal convictions." *Poventud v. City of New York*, 750 F.3d 121, 124 (2d Cir. 2014) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). Under *Heck*, if a judgment in a plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence," the complaint must be dismissed. 512 U.S. at 487. The bar established in *Heck* applies regardless of whether a plaintiff seeks damages or injunctive relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

**\*5** Plaintiff's claim relates to the search and seizure of the weapon that is the subject of his conviction and sentence. (FAC ¶ 21). To prevail on his search and seizure claim, Plaintiff would have to establish that the firearm should not have been seized and his subsequent conviction was therefore invalid. A judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by *Heck v. Humphrey*.

Plaintiff's claim also fails under a separate ground articulated in *Heck*. "[W]hen seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." *Stegemann v. Rensselaer Cnty. Sheriff's Off.*, No. 20-3316-CV, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing *Heck*, 512 U.S. at 487 n.7). Here, Plaintiff has not alleged any injury other than those related to his conviction and subsequent imprisonment, which he asserts resulted from the purportedly invalid warrant. (FAC at 14). All the damages sought by Plaintiff are directly related to the alleged harm caused by his conviction and resulting imprisonment. (*Id.* at 14). For example, Plaintiff seeks damages for the "los[s] of [his] pension and 401(k) plan," for "the suffering and pain [caused by] being incarcerated for 3 years," for "future pain and suffering" caused by not being able to find a job due to his incarceration, for "mental anguish and mental pain over the years being incarcerated," and finally for "unlawful imprisonment." (*Id.*). Each of these injuries for which Plaintiff seeks damages are a direct result of his conviction and imprisonment. Thus, even if Plaintiff's unlawful search and seizure claim does not call his conviction into question—which it necessarily does—Plaintiff cannot

recover any damages for these injuries unless and until his conviction is overturned.

Plaintiff's Fourth Amendment claim for unlawful search and seizure is, accordingly, dismissed.

### III. **Deliberate Indifference to Medical Needs Claim**

Plaintiff alleges that Defendants violated his Eighth Amendment rights by placing him in a holding cell for 6 hours without any food or water. (FAC ¶¶ 9, 18). As an initial matter, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Adams v. Simone*, 759 F. App'x 82, 84 (2d Cir. 2019) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)). Here, Plaintiff alleges that only Vigiletti and Alvarez were present during his pretrial detention. (FAC ¶¶ 8-9). Given that Plaintiff does not allege that Fantasia, Casey, and Lund were involved in Plaintiff's pretrial detention, or any of the alleged constitutional deprivations that occurred during that detention, Plaintiff's claims stemming from the six-hour pretrial detention are dismissed as to Fantasia, Casey, and Lund.[5]

---

[5]   Plaintiff also fails to allege that Defendants Vigiletti and Alvarez were personally involved in the search of Plaintiff's home and fails to allege that Defendant Lund was personally involved in Plaintiff's pretrial detention. Even if the claims against Defendants Vigiletti, Alvarez, and Lund were not dismissed on statute of limitations grounds, the Court would dismiss Plaintiff's unlawful search and seizure claim as to Defendants Vigiletti and Alvarez and the deliberate indifference claims as to Defendant Lund for failure to allege personal involvement.

**\*6** Although Plaintiff alleges that this deprivation violated his Eighth Amendment rights, a pretrial detainee's § 1983 claim of unconstitutional conditions of confinement is analyzed under the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-06315, 2018 WL 6510809, at \*7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the detainee's medical needs must be objectively "serious." *See Flemming v. Velardi*, No. 02-CV-04133, 2003 WL 21756108, at \*2

(S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether a detainee's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701-02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's deliberate indifference claim fails at the first prong. The allegations in Plaintiff's pleading demonstrate that Plaintiff did not suffer a sufficiently serious injury to trigger constitutional protection. Although he alleges that he was placed in a holding cell for 6 hours without any food or water, Plaintiff makes no allegation that he had any need for food or drink and no allegation that the lack of those accommodations for several hours had any untoward consequences whatsoever. Even if Plaintiff had alleged as much, "there is 'a *de minimis* level of imposition with which the Constitution is not concerned.' " *Lynch v. City of New York*, 952 F.3d 67, 77 (2d Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.1 (1979)) (holding that a protestor who was detained for five hours and punitively denied food, drink, and access to a bathroom failed to state a Fourteenth Amendment claim); *see also Rivera v. Connolly*, No. 18-CV-03958, 2022 WL 1785313, at \*5 (S.D.N.Y. June 1, 2022) ("Nothing about Defendant's conduct, even in Plaintiff's version of the story, is 'repugnant to the conscience of mankind' or rises to the dignity of an Eighth Amendment violation."); *Simmons v. Kelly*, No. 06-CV-06183, 2009 WL 857410, at \*7 (S.D.N.Y. Mar. 31, 2009) ("Courts in this jurisdiction have held that a deprivation of food and water during detention that only lasted a few hours did not rise to the level of a constitutional violation."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 269 (N.D.N.Y. 2008) (holding that lack of food and water overnight was not a constitutional violation); *Webster v. City of New York*, 333 F. Supp. 2d 184, 200 (S.D.N.Y. 2004) (holding that failure to provide a detainee

with food and water "for the few hours" that they were held is "insufficient as a matter of law" to support a deliberate indifference claim). Plaintiff's allegation that he did not receive food and water during his 6-hour detention, without more, does not rise to the level of a constitutional violation and, as such, his deliberate indifference claim is dismissed.

### IV. Unlawful Denial of a Telephone Call

Plaintiff alleges that Defendants violated his constitutional rights by depriving him access to a telephone call during his 6-hour detention. (FAC ¶ 18). However, Plaintiff does not have a constitutional right to a phone call. *Hodge v. Ruperto*, 739 F. Supp. 873, 876 (S.D.N.Y. 1990) (holding that there is "no constitutional requirement that a detainee be permitted a telephone call upon completion of booking formalities"); *see also Marcus v. Bush*, No. 11-CV-04049, 2013 WL 2154786, at *4 (E.D.N.Y. May 17, 2013) (holding that denying a detainee "permission to call his counsel ... for a one hour period" did not amount to a constitutional violation). Therefore, the alleged denial of a telephone call during Plaintiff's 6-hour detention cannot serve as the basis for a § 1983 claim. This claim for relief is, therefore, dismissed.

### V. *Monell* Claim

**\*7** By proceeding against Rockland County under 42 U.S.C. § 1983, the Court construes Plaintiff's Complaint to press a *Monell* claim. Such a claim requires that Plaintiff plead: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) (quoting *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012)). A *Monell* claim, however, "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)). Notwithstanding any other pleading deficiency in this case, this claim must be dismissed because Plaintiff has not pled an underlying constitutional violation. *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Even if Plaintiff sufficiently pled a constitutional violation, his *Monell* claim would nevertheless fail "for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim." *Toussaint v. Cnty. of Westchester*, No. 21-CV-03817, 2022 WL 2834108, at *9 (S.D.N.Y. July 20, 2022); *see also Smith v. Westchester Cnty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences"). Plaintiff's *Monell* claim is, accordingly, dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. [6]

[6]     Given the conclusions reached herein, the Court need not and does not address Defendants' arguments regarding qualified immunity. (Defs.' Br. at 9).

While "[d]istrict courts should frequently provide leave to amend before dismissing a pro se complaint ... leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Here, the FAC is dismissed with prejudice because any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

### All Citations

Slip Copy, 2022 WL 16540705

2023 WL 375098
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Roderick C. ARRINGTON, Plaintiff,

v.

Andrew C. LOTEMPIO, et al., Defendants.

22-CV-6141-FPG

|

Signed January 24, 2023

**Attorneys and Law Firms**

Roderick C. Arrington, Lockport, NY, Pro Se.

ORDER

FRANK P. GERACI, JR., United States District Judge

**\*1** *Pro se* Plaintiff Roderick C. Arrington, who was previously incarcerated at the Cattaraugus County Jail ("the Jail"), has submitted a Complaint seeking relief pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). He is seeking monetary damages related to his 2017 criminal prosecution and conviction in this Court, 1:15-cr-00033. Plaintiff appealed his conviction, and the United States Court of Appeals for the Second Circuit remanded the case for a new trial. *See United States v. Arrington*, 941 F.3d 24 (2d Cir. 2019) (remanding case for new trial based on the district court's failure to obtain Plaintiff's knowing and intelligent waiver of his trial counsel's conflict of interest). A new trial was held before District Judge Richard J. Arcara in September and October 2022, which resulted in a mistrial due to a "deadlocked" jury, *see* 1:15-cr-00033, ECF No. 883. Plaintiff's case was subsequently transferred to Chief Judge Elizabeth A. Wolford, *id.* at 890, and is scheduled for a status conference, *id.* at 927.

Plaintiff was previously granted leave to proceed *in forma pauperis*, and the Complaint was dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A with leave to amend. ECF No. 14 (first screening order). Currently pending before the Court is the Amended Complaint. For the reasons that follow, Plaintiff's illegal search and denial of fair trial claims are dismissed without prejudice pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff's previously asserted conditions

of confinement and equal protection claims, which have not been repleaded in the Amended Complaint, are dismissed with prejudice under §§ 1915(e)(2)(B) and 1915A.

DISCUSSION

**I. Legal Standard**

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); 28 U.S.C. § 1915(e)(2)(B).

**A. The Amended Complaint**

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a [*pro se*] claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

**B. Section 1983 and *Bivens* Claims**

**\*2** Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and *Bivens*. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or

immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Some of the Defendants are employees of the federal government, and, as such, they are not deemed persons acting under color of state law. Section 1983 does not create a cause of action against persons who act under color of federal law. *See* 42 U.S.C. § 1983. However, the Court construes Plaintiff's claims against the federal Defendants as claims brought under *Bivens*. *See Tavarez v. Reno*, 54 F.3d 109, 109-10 (2d Cir. 1995) (finding that "[a]lthough Tavarez brought the action [against federal officials] under § 1983, the district court properly construed the complaint as an action under *Bivens*"). [1]

[1] The Court notes that under the United States Supreme Court's decision in *Ziglar v. Abbassi*, 137 S. Ct. 1843 (2017), there is an initial question herein whether *Bivens* provides an avenue for relief to Plaintiff. In *Ziglar*, the Court stated that when determining whether to extend an implied right of action under *Bivens* to a "new context," the courts must be hesitant and consider whether there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (internal quotations and omitted). This issue is not appropriately decided upon screening of a complaint pursuant to § 1915(e)(2)(B) and without briefing by the parties upon either a motion to dismiss or for summary judgment. Therefore, for purposes of initial screening only, the Court assumes a remedy under *Bivens* is available to Plaintiff in this action.

The relevant procedural background in Plaintiff's criminal case is detailed in the Court's first screening order. ECF No. at 14 at 4-5. [2] The Court assumes the parties' familiarity with those facts as well as allegations contained in the original Complaint, which are also detailed in the Court's first screening order. ECF No. 14 at 6-8. Plaintiff's amended allegations, as described below, are substantially similar to the original allegations.

[2] In completing the narrative of the original Complaint, the Court took judicial notice of the Second Circuit's decision in *Arrington*, 941 F.3d 24, "to establish its existence" and note "certain factual findings" that are necessary to provide

context to the present action. *Hurd v. Fredenburgh*, 984 F.3d 1075, 1083 (2d Cir. 2021).

**C. Claims against Defendant LoTempio**

In the first screening order, the Court dismissed with leave to amend Plaintiff's claims against his former defense attorneys, Andrew LoTempio and Robert Singer, because Plaintiff failed to allege nonconclusory facts to establish that either attorney has been acting under color of federal law for purposes of a *Bivens* claim. That is, Plaintiff failed to allege (1) any agreement between his attorneys and the federal prosecutors "to inflict an unconstitutional injury," or (2) any overt act done in furtherance of such an agreement. *See* ECF No. 14 at 8-9.

In the Amended Complaint, Plaintiff specifically alleges that LoTempio violated his right to a fair trial when he conspired with Assistant United States Attorney ("AUSA") Wei Xiang to play "Good cop Bad cop" on the morning of jury selection for Plaintiff's 2017 trial and "coerced and flipped" Plaintiff's co-defendant, Marcel Worthy, "into a last minute cooperation plea deal." ECF No. 17 at 12. The first screening order found that AUSA Xiang was absolutely immune for all actions taken as an exercise of his prosecutorial discretion, including engaging in plea negotiations and entering into plea agreements. ECF No. 14 at 10-11.

**\*3** As the Court previously advised Plaintiff, to pursue a claim against Defendant LoTempio, ECF No. 14 at 8-9, he must allege "an agreement" between LoTempio and the federal prosecutor "to act in concert" to deprive Plaintiff of a constitutional right. *Udechukwu v. City of New York*, 333 F. Supp. 3d 161, 169 (E.D.N.Y. 2018) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A claim based on the denial of a fair trial "finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015) (citing *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial)). To sustain a fair trial claim, "a plaintiff must demonstrate that '(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' " *Case v. City of New York*, 408 F. Supp. 3d 313, 322 (S.D.N.Y. 2019) (quoting *Caravalho v. City of New York*, 732 F. App'x 18, 24 (2d Cir. 2018)).

Here, Plaintiff does not specifically allege that he was denied a fair trial based on the "flip[ing]" of his co-defendant. The Amended Complaint does not allege that Worthy testified falsely against him at trial, *see Soomro v. City of New York, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016)* (noting that to meet the elements of a denial of fair trial claim, plaintiff must allege that false or fabricated evidence "that is likely to influence a jury's decision" was distributed to the prosecution), and he was not the only witness to testify that Plaintiff shot the victim, *see Arrington, 941 F.3d at 35* ("Another witness, Ja'Quan Johnson, testified that Arrington shot [the victim] and that in the days leading up to the shooting, Arrington asked people in the neighborhood about [the victim's] whereabouts."). The Amended Complaint is, further, devoid of non-conclusory allegations that AUSA Xiang entered an agreement or acted in concert with LoTempio to (1) "flip" Worthy or (2) deprive Plaintiff of his right to a fair trial. A pleading that alleges "naked assertions devoid of further factual enhancement" is insufficient. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (alteration and internal quotation marks omitted).

Moreover, even assuming that Plaintiff has adequately alleged a conspiracy with the prosecution for purposes of bringing a *Bivens* claim against his defense attorney, the Supreme Court's decision in *Heck v. Humphrey, 512 U.S. 477 (1994)*, precludes claims for damages that (1) necessarily have the effect of challenging a criminal conviction that (2) has not been terminated in a plaintiff's favor.

It has been held that reversal of a conviction and remand for a new trial does not constitute a favorable termination. *See Thomas v. Mason, No. 1:17-CV-626 (DJS), 2019 WL 6111572, at \*2-3 (N.D.N.Y. Nov. 18, 2019)* (holding that the reversal of a criminal conviction with a remand for a new trial is not a favorable termination within the meaning of *Heck* and that plaintiff's "fabricated-evidence claim accrued upon his ultimate acquittal, not the reversal of his initial conviction"); *McDonough v. Smith, 139 S. Ct. 2149, 2161 (2019)* (addressing retrial after mistrial and stating that "[t]he statute of limitations for McDonough's § 1983 claim alleging that he was prosecuted using fabricated evidence began to run when the criminal proceedings against him terminated in his favor—that is, when he was acquitted at the end of his second trial"); *accord Poventud v. City of New York, 750 F.3d 121, 131 (2d Cir. 2014)* ("Although in some instances a habeas court may terminate a criminal proceeding in the defendant's favor, the reversal of a conviction and remand for a new trial does not constitute such a termination.").

**\*4** It is well settled that "not every § 1983 claim that arises out of a criminal case requires that the underlying criminal process reach a favorable termination.... A plaintiff need not prove that any conviction stemming from an incident with the police has been invalidated, only a conviction that could not be reconciled with the claims of his civil action." *Poventud, 750 F.3d 121 at 132.* In this case, Plaintiff asserts a claim for denial of a fair trial, based on his codefendant's cooperation plea deal and as well as the confiscation of his trial materials and fabricated evidence stemming from cell searches (see below). "A section 1983 claim for the denial of a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction." *Bailey, 79 F. Supp. 3d at 445.* "Where a plaintiff's right to a fair trial claim would necessarily impugn the validity of his conviction, 'the complaint must be dismissed unless [he] can demonstrate that the conviction or sentence has already been invalidated.' " *Id.* (quoting *Heck, 512 U.S. at 487*). The Court finds that Plaintiff's fair trial claim necessarily impugns the validity of his conviction. Because his criminal case has been remanded for a new trial and is still pending, his fair trial claim has not yet accrued. It is therefore dismissed without prejudice under *Heck* as to all Defendants in this action.

### D. Jail Cell Search
Plaintiff alleges that his jail cell was illegally searched by FBI Agents Jared Fitzgerald and Rob Colunga, in an effort to investigate Plaintiff "for uncharged crimes" and at the request of federal prosecutors, Bethany Lipman and Jeremiah Lenihan. ECF No. 17 at 15.

In the first screening order, ECF No. 14 at 12-13, this Court addressed Plaintiff's claim that his jail cell was searched pursuant to a protective order directing that he "surrender" certain legal material "currently in [his] possession to the Jail staff upon entry of [the protective] order." ECF No. 1 at 37. The Court noted that the protective order was issued by United States District Judge Arcara in his criminal case, and he has had the opportunity to address the order, and its enforcement, during his criminal proceedings. ECF No. 1 at 37; 15-CR-0033-RJA; *see United States v. Arrington, No. 15-CR-33-A, 2022 WL 3229843, at \*3 (W.D.N.Y. Aug. 10, 2022)* (denying Arrington's motion to dismiss the superseding indictment based on the same search allegations). The Court dismissed these claims accordingly.

In the Amended Complaint, Plaintiff appears to reassert this same allegations, ECF No. 17 at 16, and well as

new cell search and fabricated evidence claims against Defendant Colunga. Plaintiff alleges that Special Agent Colunga conducted an "illegal investigatory search" in connection to a "cold case homicide" and created "new evidence" in Plaintiff's pending criminal case by planting Plaintiff's DNA sample on a firearm. ECF No. 17 at 15. The Court finds that all of Plaintiff's illegal search claims are related to his criminal case, he has raised the same challenges in motions filed in that case, and he has received or is awaiting rulings on these challenges. *See Arrington*, 2022 WL 3229843, at *3; 15-cr-00033-EAW, ECF No. 922.

Because Plaintiff is awaiting trial, the appropriate vehicle for alleging violations of his constitutional rights in that case is indeed pretrial motions, not a § 1983 action. Moreover, under the principle set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, the Court must abstain from intervening in Plaintiff's pending criminal proceedings. To the extent that Plaintiff seeks damages as opposed injunctive relief, because his criminal case has not been terminated in his favor, as state above, his claims are barred by *Heck* because they necessarily impugn the validity of his conviction.

### E. Previously Asserted § 1983 Claims

In the first screening order, the Court dismissed Plaintiff's conditions of confinement and equal protection claims for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. ECF No. 14 at 13-15. Although Plaintiff was granted leave to amend these claims, he did not replead them in the Amended Complaint. The Court deems these claim abandoned, and, consequently, they are now dismissed

with prejudice. *See McFadden v. Annucci*, No. 18-CV-6684-FPG, 2021 WL 4942064, at *10 (W.D.N.Y. Oct. 22, 2021) (dismissing claim previously dismissed without prejudice as abandoned).

### CONCLUSION

**\*5** For the reasons discussed above, Plaintiff's fair trial and illegal search claims are dismissed without prejudice pursuant to the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff's remaining claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Clerk of Court is directed to close this case as dismissed.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

### All Citations

Slip Copy, 2023 WL 375098

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Braithwaite v. Collins, Slip Copy (2023)

2023 WL 2350030

KeyCite Blue Flag – Appeal Notification

Appeal Filed by  BRAITHWAITE v. COLLINS,  2nd Cir.,  March 28, 2023

2023 WL 2350030
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Honorable John B. COLLINS, Justice Supreme Court, Suffolk County; Timothy Sini, District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; John Doe, Suffolk County Police Department; Hon. Timothy P. Mazzei, Justice Supreme Court; Jacob Kubetz, Assistant District Attorney, Suffolk County; Brian M. Karp, D/Sgt. Badge # 0639, Suffolk County Police Department; Michael Cosgrove, D/Sgt. Badge # 0539, Suffolk County Police Department; Daniel Fischer, D/Sgt. Badge # 0611, Suffolk County Police Department; Ghysline C. McBean, Badge # 1212, Suffolk County Police Department; Richard Palazzolo, Badge # 1323, Suffolk County Police Department; Michael Papocchia, Suffolk County Police Department; Sean C. Comiskey, Badge # 1251, Suffolk County Police Department; Charles Flacker, Badge # 1334, Suffolk County Police Department; Erik M. Perelli, D/Sgt. Badge # 633, Suffolk County Police Department; Detective Neknez, Badge # 1515, Suffolk County Police Department; Detective Cianfrogna, Badge # 1475, Suffolk County Police Department; Detective Krolikiewicz, Badge # 1531, Suffolk County Police Department; Detective Saleh, Badge # 1533, Suffolk County Police Department; Detective Colby, Badge # 1656, Suffolk County Police Department; John Doe #2, Foreperson/Grand Juror No. 8A; John Doe #3, Assistant Foreperson/Grand Juror No. 8A; John Does #4-21; Clerks of the Court at 210 Center Drive, Riverhead, NY; John Doe #22, Assistant District Attorney; Suffolk County Police Department; Suffolk County District Attorney Office; Jason Russo, Esq.; Steven Gaitman, Esq.; Gaitman & Russo, PLLC; and, Steve Fondulis, Esq., Defendants.
Keston Braithwaite, Plaintiff,

v.

United States, the Capitol; Task Force Officer Corso, United States Marshal; Brian Grazidei, United States Marshal; John Seymour, United States Marshal; Kenneth Lopez, United States Marshal; Jason Langois, United States Marshal, Defendants.
Keston Braithwaite, Plaintiff,

v.

State of New York, Office the Attorney General; Suffolk County New York, H. Lee Dennison Building; Wayne Heter, Suffolk County Police Department; Brian Keegan, Suffolk County Police Department, Defendants.
Keston Braithwaite, Plaintiff,

v.

Suffolk County New York, H. Lee Dennison Building; New York State, Office of the Attorney General; Raymond Teirney, District Attorney, Suffolk County; Jacob Kubetz, Assistant District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Kate Wagner, Assistant District Attorney, Suffolk County; John Doe, Chief of Special Narcotics Suffolk County; Honorable Timothy Mazzei, Supreme Court Justice; Honorable John Collins, Supreme Court Justice, Defendants.
Keston Braithwaite, Plaintiff,

v.

State of New York, Office the Attorney General; Suffolk County, New York, H. Lee Dennison Building; Eric M. Perelli, Suffolk County Police Department; Detective Neknez, Suffolk County Police Department; Detective Cianfrogna, Suffolk County Police Department; Detective Saleh, Badge # 1533, Suffolk County Police Department; Detective Colby, Badge # 1656, Suffolk County Police Department, Defendants.
Keston Braithwaite, Plaintiff,

v.

Jacob Kubetz, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; T-Mobil US Inc., Telephone Carrier; Verizon, Telephone Carrier; Sytech Corporation, Innovator of Wiretap Systems, Defendants.

22-CV-00161(JS)(AYS), 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), 22-CV-5359(JS)(AYS)
|

Signed March 3, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22-B-4593, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

For Defendants: No appearance.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** Before the Court are the applications to proceed in forma pauperis ("IFP") (hereafter, the "IFP Applications") filed by incarcerated pro se plaintiff Keston Braithwaite ("Plaintiff") [1] in relation to his Complaints filed in the cases, captioned above, that challenge an underlying state criminal investigation, prosecution, and his conviction arising therefrom. [2] (See Case Docket Nos. 22-CV-5070, 22-CV-5071, 22-CV-5073, 22-CV-5074, and 22-CV-5359 (collectively, the "Post-Conviction Cases"), IFP Applications, ECF Nos. 2, respectively; see also Post-Conviction Cases, Compls., ECF Nos. 1, respectively (collectively, the "Post-Conviction Complaints").) In addition, Plaintiff has moved to re-open his original case in this Court, assigned Case No. 22-CV-00161 (hereafter, the "First Case"), following his conviction. (See First Case, No. 22-CV-00161, Re-Open Motion, ECF No. 31.) For the reasons that follow, Plaintiff's: (1) IFP Applications are GRANTED; (2) Motion to Re-Open the First Case is GRANTED; (3) Post-Conviction Complaints are CONSOLIDATED into the First Case (No. 22-CV-00161); and (4) claims are sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

[1]     Plaintiff is a prolific filer in this Court. In addition to the six complaints addressed in this Memorandum and Order, Plaintiff has filed three other pro se in forma pauperis complaints also relating to his arrest and state court criminal prosecution:

(i) Braithwaite v. Gaitman, et al., No. 22-CV-0974(JS)(AYS), Memorandum & Order (E.D.N.Y. Oct. 24, 2022) (dismissing claims sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii), 1915A(b)(1)) (docketed in case at ECF No. 19));

(ii) Braithwaite v. Suffolk County, et al., No. 22-CV-3750(JS)(AYS), Memorandum & Order (E.D.N.Y. Nov. 9, 2022) (dismissing claims sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1)) (docketed in case at ECF No. 10); see also id., Case Docket, at ECF No. 19 (Notice of Appeal filed Jan. 20, 2023); and

(iii) Braithwaite v. Tropea, et al., No. 23-CV-1431(JS)(AYS), Complaint (E.D.N.Y. Feb. 17, 2023) (case pending).

In addition, the Court notes Plaintiff has also raised many of the same claims against the same parties brought before this Court in five separate cases in state court. See:

(a)     Braithwaite v. Verizon, Index No. 617779/2022, Supreme Court, Suffolk County;

(b)     Braithwaite v. Sy Tech Corp., Index No. 617773/2022, Supreme Court, Suffolk County;

(c)     Braithwaite v. T-Mobile USA, Inc., Index No. 617756/2022, Supreme Court, Suffolk County;

(d)     Braithwaite v. Gaitman, Esq., Index No. 611821/2022, Supreme Court, Suffolk County; and

(e)     Braithwaite v. Hon. John B. Collins, et al., Index No. 608298/2022, Supreme Court, Suffolk County.

[2]     On July 18, 2022, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including: Operating as a Major Trafficker, a class A-1 felony; and Conspiracy in the Second Degree, a class B felony. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (E.D.N.Y. Oct. 24, 2022) (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)).

BACKGROUND [3]

[3]     Excerpts from the Complaints are reproduced here exactly as they appear in the originals. Errors in spelling, punctuation, and grammar have not been corrected or noted.

I. Procedural History

**\*2** Plaintiff's Post-Conviction Complaints addressed in this Memorandum and Order, with notable overlap, all relate to the manner in which the Suffolk County District Attorney's Office, the individual assistant district attorneys, police officers and the Suffolk County Police Department, the United States and United States Marshals secured his grand jury indictment and conviction in the underlying state court criminal prosecution. Plaintiff also seeks to challenge the conduct of various actors involved in his underlying criminal proceedings, to wit, the state court judges, his criminal defense attorneys, the jurors, court clerks, and cellular service providers who allegedly conspired to convict him.

Given the volume of Plaintiff's filings addressed herein, which collectively total approximately 900 pages, the Court recites the relevant history and facts necessary to understand its determination reached in this Memorandum and Order.

    A. Plaintiff's First Case, 22-CV-0161(JS)(AYS)
On January 10, 2022, while a pre-trial detainee on state criminal charges, Plaintiff filed a 52-page complaint against some 50 defendants using the Court's Section 1983 Complaint Form with 47 additional, handwritten pages attached. (See First Case, Compl., ECF No. 1.) The gravamen of Plaintiff's Complaint was that he was being unfairly prosecuted in state court during his then on-going criminal prosecution. (See generally id.) Thereafter, following Plaintiff's attempt to supplement his First Case Complaint, the Court permitted "Plaintiff to file an amended, stand-alone complaint" which he did. (See First Case, Feb. 11, 2022 Order, ECF No. 13; [4] Am. Compl. ECF No. 19.)

[4]    Also available on Westlaw at 2022 WL 426165.

The 243-page Amended Complaint (hereafter, the "First Case Amended Complaint") was brought against 43 defendants [5] raising 24 causes of action challenging his then on-going state court prosecution. According to the First Case Amended Complaint, the investigation leading to Plaintiff's arrest, his arrest, and his on-going prosecution violated Plaintiff's constitutional rights. Plaintiff alleged improprieties with, inter alia, wiretaps, video surveillance, his arrest, and court appearances (including the representation by his attorneys) and set forth broad claims of judicial and prosecutorial misconduct for which Plaintiff sought "the dismissal of all charges" in addition to $100 million in compensatory and punitive damages. (See First Case, Am. Compl. generally and at 241-42 (Part III: Relief).)

[5]    Plaintiff named the following defendants: Honorable John B. Collins, Justice Supreme Court; Timothy Sini, District Attorney, Suffolk County; Meaghan Powers, Assistant District Attorney, Suffolk County; Wayne Heter, Suffolk County Police Department; John Doe #1, Suffolk County Police Department; Hon. Timothy P. Mazzei, Justice Supreme Court; Jacob Kubetz, Assistant District Attorney Suffolk County; Brian M. Karp, Suffolk County Police Department; Michael Cosgrove, Suffolk County Police Department; Daniel Fischer, Suffolk County Police Department; Ghysline C. McBean, Suffolk County Police Department; Richard Palazzolo, Suffolk County Police Department; Michael Papocchia, Suffolk County Police Department; Sean C. Cominskey, Suffolk County Police Department; Charles Flacker, Suffolk County Police Department; Erik M. Perelli, Suffolk County Police Department; Detective Neknez, Suffolk County Police Department; Detective Cianfrogna, Suffolk County Police Department; Detective Krolikiewicz, Suffolk County Police Department; Detective Saleh, Suffolk County Police Department; Detective Colby, Suffolk County Police Department; John Doe #2, Foreperson; John Doe #3, Assistant Foreperson; John Doe #4, Clerk of the Court; John Doe #5, Clerk of the Court; Suffolk County Police Department; Suffolk County District Attorney Office; John Does #6-21, Clerk of the Court; John Doe #22, Assistant District Attorney; Jason Russo Esq., Attorney of Law; Steven Gaitman Esq., Attorney of Law; Gaitman & Russo, PLLC, Law Office; Steve Fondulis Esq., Attorney of Law. (See First Case, Am. Compl., ECF No. 19.)

**\*3** By Memorandum and Order dated May 23, 2022, the Court granted Plaintiff's application to proceed in forma pauperis and sua sponte: (1) dismissed without prejudice Plaintiff's claims seeking injunctive relief (i.e., intervention in the ongoing state court criminal proceedings by dismissing the charges against Plaintiff) pursuant to Federal Rule of Civil Procedure 12(h)(3); and (2) stayed Plaintiff's claims seeking damages pending the conclusion of the underlying state criminal case with leave to re-open the First Case "within 30 days of the conclusion of his state court criminal proceedings, if so warranted at that time." (See First Case,

Memorandum & Order, ECF No. 21, in toto and at 10-11 (emphasis omitted).)

On July 18, 2022, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony; he was sentenced on September 23, 2022. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)). On September 30, 2022, Plaintiff timely requested that his First Case be re-opened given the conclusion of the state court criminal proceeding on September 23, 2022. (See Re-Open Motion, ECF No. 31 (dated Sept. 26, 2022).)

B. Plaintiff's Post-Conviction Complaints [6]

[6]   Plaintiff filed four complaints on August 24, 2022 (Case Nos. 22-CV-5070, 22-CV-5071, 22-CV-5073, 22-CV-5074) and another complaint (Case No. 22-CV-5359) on September 6, 2022, all well after his July 18, 2022 conviction.

1. Case No. 22-CV-5070(JS)(AYS), Braithwaite v. United States, et al.

Plaintiff's 21-page Complaint names the United States and five United States Marshals: Task Force Officer Corso ("Corso"), Brian Grazidei ("Grazidei"), John Seymour ("Seymour"), Kenneth Lopez ("Lopez"), and Jason Langois ("Langois"); in it, Plaintiff challenges the alleged warrantless search of his apartment on May 19, 2020, and his warrantless arrest. (See Case No. 22-CV-5070(JS)(AYS), Compl., ECF No. 1, in toto.) Plaintiff used the Court's civil rights complaint form, checking the box indicating that his claims are brought pursuant to Bivens. [7] (Id. ¶ II. A.) He seeks to recover a damages award in the sum of $10 million. (Id. at 17.)

[7]   Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), permits suits against federal employees for violations of certain federal constitutional rights. Here, Plaintiff alleges that he suffered a deprivation of his Fourth, Eighth, and Fourteenth Amendment rights and

related state law claims. (See Compl., ECF No. 1, at 12.)

2. Case No. 22-CV-5071(JS)(AYS), Braithwaite v. State of New York, et al.

This 28-page Complaint is brought pursuant to 42 U.S.C. § 1983 against the State of New York ("NY State"), Suffolk County, and two Suffolk County Police Officers, Wayne Heter ("P.O. Heter") and Brian Keegan ("P.O. Keegan"), alleging a deprivation of Plaintiff's Fourteenth Amendment rights. (See Case No. 22-CV-5071(JS)(AYS), Compl., ECF No. 1, in toto.) More specifically, Plaintiff claims that P.O. Heter and P.O. Keegen committed perjury that resulted in Plaintiff's indictment and conviction. (Id. at 7.) Plaintiff's allegations against P.O. Heter are largely repetitive of his allegations set forth in the Amended Complaint filed in the First Case. (Compare id., in toto, with First Case Am. Compl, Case No. 22-CV-0161, ECF No. 19, in toto.) Further, Plaintiff claims that NY State and Suffolk County failed to properly train and supervise these officers. (See id. at 21.) For relief, Plaintiff seeks to recover a damages award in the total sum of $10 million. (See id. at 24.)

3. Case No. 22-CV-5073(JS)(AYS), Braithwaite v. Suffolk County, New York, et al.

**\*4** This 28-page Complaint, with an additional 17 pages of exhibits, is also brought pursuant to 42 U.S.C. § 1983 alleging a deprivation of Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights against NY State and Suffolk County, as well as the following defendants: the Suffolk County District Attorney Raymond A. Tierney ("D.A. Tierney"), Assistant District Attorneys Jacob Kubetz ("A.D.A. Kubetz"), Meaghan Powers ("A.D.A. Powers"), Kate Wagner ("A.D.A. Wagner"), and an unidentified prosecutor alleged to be the Chief of Special Narcotics ("John Doe"). Plaintiff further names two Justices of New York State Supreme Court, Suffolk County: Timothy Mazzei ("Judge Mazzei") and John B. Collins ("Judge Collins"). (See Case No. 22-CV-5073(JS)(AYS), Compl., ECF No. 1, in toto.) Here, Plaintiff alleges malicious prosecution claims challenging the grand jury proceedings and asserting that his warrantless arrest and the warrantless search of his apartment were unconstitutional; therefore, he should have never been indicted. (See id. at 9-15.) For relief, Plaintiff seeks the dismissal of the indictment and to recover a damages award of $10 million. (See id. at 25.)

### 4. Case No. 22-CV-5074(JS)(AYS),
Braithwaite v. State of New York, et al.

This 20-page Complaint, with an additional 16 pages of exhibits, is brought pursuant to 42 U.S.C. § 1983 against NY State, Suffolk County, and five Suffolk County Police Officers: Eric M. Perelli ("P.O. Perelli"), Detective Neknez ("Det. Neknez"), Detective Cianfrogna ("Det. Cianfrogna"), Detective Saleh ("Detective Saleh"), and Detective Colby ("Det. Colby"). Plaintiff alleges a deprivation of his Fourth, Eighth, and Fourteenth Amendment rights. (See Case No. 22-CV-5074(JS)(AYS), Compl., ECF No. 1, in toto, and at 12, 16.) Like the allegations set forth in Case Nos. 22-CV-0161 and 22-CV-5073, here, Plaintiff challenges the alleged warrantless search and arrest. His allegations against the individual officers are largely repetitive of his allegations set forth in the First Case Amended Complaint. For relief, Plaintiff seeks a $10 million damages award. (See id. at 16-17.)

### 5. Case No. 22-CV-5359(JS)(AYS),
Braithwaite v. Jacob Kubetz, A.D.A., et al.

Plaintiff's 45-page Complaint in this action, with an additional 351 pages of exhibits, is brought pursuant to 42 U.S.C. § 1983 against A.D.A. Kubetz, P.O. Heter, T-Mobile US Inc. ("T-Mobile"), Verizon, and Sy Tech Corporation ("Sy Tech"), with Plaintiff alleging a deprivation of his Fourth and Fourteenth Amendment rights. (See Case No. 22-CV-5359(JS)(AYS), Compl., ECF No. 1, in toto, and at 6.) The allegations here against A.D.A. Kubetz and P.O. Heter are largely the same as the allegations raised against them in Plaintiff's First Case. The gravamen of this Complaint is that cell phone service providers T-Mobile and Verizon provided law enforcement with Plaintiff's location data without his permission or consent. (See id. at 6-7.) Plaintiff claims that Defendants conspired to deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches. (See id. at 8.) According to the Complaint, the state "court issued an eavesdropping warrant that governs oral and electronic communications", but Defendants did not have a warrant to collect "ping data" as to Plaintiff's location; thus, the use of that ping data against Plaintiff during the underlying criminal trial was prejudicial. (See id. at 8-9.) For relief, Plaintiff seeks both a $50 million damages award and the criminal prosecution of the Defendants. (Id. at 38-42.)

### DISCUSSION

#### I. Plaintiff's In Forma Pauperis Applications are Granted
Having reviewed his financial status, the Court finds that Plaintiff is qualified to commence these actions without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's IFP Applications are GRANTED.

#### II. Consolidation
Under Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990). Consolidation of cases with common questions of law or fact is favored "to avoid unnecessary costs or delay," Johnson, 899 F.2d at 1284, and to "expedite trial and eliminate unnecessary repetition and confusion," Devlin v. Transp. Commc'n Int'l Union, 175 F.3d 121, 130 (internal citations omitted). Further, "[t]he Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations. Where there are several competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Kellen Co., Inc. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999) (cleaned up); accord Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991); First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989). The first-filed rule seeks to conserve judicial resources and avoid duplicative litigation. See Jacobs, 950 F.2d at 92; First City Nat'l Bank & Trust Co., 878 F.2d at 80; Kellen, 54 F. Supp. 2d at 221.

**\*5** Here, Plaintiff's Post-Conviction Complaints and the First Case Amended Complaint all seek to challenge, inter alia, the investigation leading to Plaintiff's arrest, the alleged warrantless search of his apartment, his arrest, and the presentation of evidence to the grand jury in the underlying state court criminal prosecution. Although the First Case was filed pre-conviction, the Post-Conviction Complaints and First Case Amended Complaint involve common issues of law and fact. Accordingly, in the sound exercise of its discretion and pursuant to Rule 42 of

Federal Rule of Civil Procedure 42, the Court orders that Plaintiff's Post-Conviction Cases be CONSOLIDATED into Plaintiff's First Case, Case No. 22-CV-0161(JS)(AYS). The Clerk of Court is DIRECTED to: (1) consolidate these actions; and (2) thereafter, mark the cases assigned Case Nos. 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), and 22-CV-5359(JS)(AYS) CLOSED. Any future filings are to be docketed in **only in the First Case, No. 22-CV-0161(JS) (AYS)**.

III. Consideration of First Case Amended Complaint Under the Section § 1915A Analysis

A. Applicable Law

1. 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint without prejudice if the Court lacks subject matter jurisdiction. See FED. R. CIV. P. 12(h)(3). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual

allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

2. Section 1983 and *Bivens*

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

**\*6** A claim alleging a deprivation of a constitutional right against federal officials is properly brought pursuant to Bivens and is narrower than Section 1983. Indeed:

> [o]ver the past half-century, the [U.S. Supreme] Court has endorsed such a claim in only three instances: (1) unlawful search of a home and warrantless arrest in violation of the Fourth Amendment, Bivens, 403 U.S. at 395-97; (2) employment discrimination based on gender in violation of the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228 (1979); and (3) inadequate medical treatment of a prisoner, resulting in the prisoner's death, in violation of the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980). "After those decisions, however, the Court changed course." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). Today, the Supreme Court has warned, expanding Bivens is a "disfavored" judicial activity. Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017).

Fisher v. Bureau of Alcohol, Tobacco & Firearms (ATF), et al., No. 22-CV-6440, 2023 WL 2082552, at *10–11 (W.D.N.Y. Feb. 17, 2023) (quoting Komatsu v. United States, No. 21-CV-1838, 2023 WL 317326, at *5 (S.D.N.Y. Jan. 19, 2023)).

Liberally construed, Plaintiff alleges deprivations of his right to be free from unlawful searches and seizures and the right to a fair trial. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...," and further provides that "no Warrants shall issue, but upon probable cause...." Const. amend IV; see also United States v. Barner, 666 F.3d 79, 82 (2d Cir. 2012) ("The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy.") (quoting United States v. Newton, 369 F.3d 659, 664 (2d Cir. 2004)). "Based on this constitutional text, the Court has repeatedly held that searches conducted outside the judicial process, without prior approval by a [a] judge or [a] magistrate [judge], are per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." City of Los Angeles, Cal. v. Patel, 576 U.S. 409, 419 (2015) (internal quotation marks omitted) (quoting Arizona v. Gant, 556 U.S. 332, 338 (2009)).

"A claim based on the denial of a fair trial 'finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments.' " Arrington v. LoTempio, No. 22-CV-6141, 2023 WL 375098, at *2 (W.D.N.Y. Jan. 24, 2023) (quoting Bailey v. City of N.Y., 79 F. Supp. 3d 424, 445 (E.D.N.Y. 2015) (citing Holbrook v. Flynn, 475 U.S. 560, 567 (1986) (recognizing that the Sixth and Fourteenth Amendments secure the constitutional right to a fair trial)). A plaintiff alleging a fair trial claim "must demonstrate that '(1) an investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.' " Case v. City of N.Y., 408 F. Supp. 3d 313, 322 (S.D.N.Y. 2019) (quoting Caravalho v. City of N.Y., 732 F. App'x 18, 24 (2d Cir. 2018)).

B. Application

1. *Heck v. Humphrey* Bars Plaintiff's Section 1983 and *Bivens* Claims

**\*7** When a claim under Section 1983 calls into question the validity of an underlying conviction, a district court must dismiss the claim, unless the conviction has been invalidated. Heck v. Humphrey, 512 U.S. 477, 487 (1994); Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (Heck's bar applies regardless of whether a plaintiff seeks damages or injunctive relief). The petitioner in Heck was an inmate with a direct appeal from his conviction pending, who brought a Section 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him. Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's Section 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor. Id. at 486–87. In Heck, the Supreme Court enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid. Id.

Here, on July 18, 2022, in Suffolk County Court, Criminal Term, Index No. 00308C-2020, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See Braithwaite v. Gaitman, et al., No. 22-CV-00974(JS)(AYS), Memorandum & Order (ECF No. 19) at 3 n.3 (E.D.N.Y. Oct. 24, 2022) (citing https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022)). He was sentenced on September 23, 2022. See, e.g., Braithwaite v. Tropea, No. 23-CV-1431 (JS)(AYS), Ex. 18 (ECF No. 7-4 at ECF pp.32-96) (E.D.N.Y. 2023) (Sept. 23, 2022 Sent'g Hr'g Tr.). As is readily apparent, affording the pro se First Case Amended Complaint, as well as the Post-Conviction Complaints, a liberal construction, there is no allegation that Plaintiff's conviction has been invalidated. Indeed, all of these Complaints were filed in this Court before Plaintiff was sentenced. Because Plaintiff's success on his civil rights claims in his consolidated cases would necessarily invalidate the conviction, which is not alleged to have been reversed or vacated, Plaintiff's Section 1983 and Bivens claims are not cognizable under Heck. Thus, Heck's bar precludes their adjudication.[8] Indeed, Plaintiff's Fourth Amendment claims relate to the search of his apartment

and his arrest from which his conviction followed. As is readily apparent, "[a] judgment in Plaintiff's favor on the unlawful search and seizure claim would clearly imply the invalidity of his conviction, and the claim is therefore barred by Heck v. Humphrey." Curtis v. Rockland County, No. 21-CV-04294, 2022 WL 16540705, at *5 (S.D.N.Y. Oct. 28, 2022). Moreover, the Second Circuit has made clear that, "when seeking compensatory damages for an allegedly unreasonable search while the underlying conviction still stands, a plaintiff may only recover for an injury other than the harm caused by the conviction and the imprisonment resulting therefrom." Stegemann v. Rensselaer County Sheriff's Off., No. 20-CV-3316, 2021 WL 5492966, at *2 (2d Cir. Nov. 23, 2021) (citing Heck, 512 U.S. at 487 n.7).

8    Although "[Section] 1983 remains a possible remedy when there is no other federal avenue through which to bring a claim," Chillemi v. Town of Southampton, 943 F. Supp. 2d 365, 375 (E.D.N.Y. 2013), Plaintiff has the opportunity to seek habeas relief once his constitutional claims are properly exhausted in state court.

Given that Plaintiff has not alleged any injury other than those related to his conviction and imprisonment, which he asserts resulted from the alleged warrantless search and arrest, he cannot recover any damages for these injuries unless and until his conviction is overturned. See, e.g., Curtis v. Rockland County, No. 21-CV-4294, 2022 WL 16540705, at *5 (S.D.N.Y. Oct. 28, 2022). Accordingly, Plaintiff's Section 1983 and Bivens [9] claims are not plausible and are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). See Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006) ("allegations of extensive conspiratorial misconduct between defense counsel and the prosecution would render the [plaintiff's] convictions invalid if they were proved" and, thus, are barred by Heck); Whaley v. Lopez, No. 12–CV–2889, 2012 WL 3137900, at *7 (E.D.N.Y. July 30, 2012) (prosecutorial misconduct claim is barred because such conduct necessarily implies invalidity of the conviction (citing Kevilly v. New York, 410 F. App'x 371, 374 (2d Cir. 2010))); see also Arrington, 2023 WL 375098 at *3-4 (sua sponte dismissing plaintiff's illegal search and denial-of-fair-trial claims without prejudice pursuant to Heck, including related conspiracy claims, brought pursuant to Section 1983 and Bivens).

9    Further, "Bivens claims do not lie against federal employees in their official capacities, because such

suits are considered actions against the United States and are barred by the doctrine of sovereign immunity." Wright v. Condit, No. 13-CV-2849, 2015 WL 708607, at *1 (S.D.N.Y. Feb. 18, 2015) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994)). Therefore, Plaintiff cannot pursue his constitutional claims against the individual unnamed employees in their official capacities.

2.  Section 1983 Claims Against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq., Verizon, T-Mobile, Sy Tech, and the Grand Jurors

**\*8** Although Heck bars Plaintiff's claims seeking to impose Section 1983 liability on his criminal defense attorneys, three cellular service providers, and the Grand Jurors who indicted him, such claims are not plausible for the additional reason that none of these Defendants are state actors. Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.' " Hooda v. Brookhaven Nat'l Lab., 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted); Fabrikant v. French, 691 F.3d 193, 206 (2d Cir. 2012) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is [ ] required to show state action." (internal quotation marks and citation omitted)). Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

A private actor, such as these Defendants, may be considered as acting under the color of state law for purposes of Section 1983 if the private actor was a " 'willful participant in joint activity with the State or its agents.' " Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Section 1983 liability may also extend to a private party who conspires with a state actor to violate a plaintiff's constitutional rights. See Ciambriello, 292 F.3d at 323-24. In order to state a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an

overt act done in furtherance of that goal causing damages." Id. at 324-25 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). Indeed, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Id. at 324 (internal quotation marks omitted).

Here, insofar as Plaintiff seeks to impose liability on his defense attorneys for his claimed constitutional deprivations, such claims are not plausible because these defendants are not state actors. Attorneys, whether court-appointed or privately retained, are generally not state actors for purposes of Section 1983. See, e.g., Polk County v. Dodson, 454 U.S. 312, 325 (1981); see also Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to [a] defendant [in a criminal proceeding] do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"). Nor has Plaintiff sufficiently alleged that any of these Defendants acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right. Although Plaintiff's voluminous submissions are replete with broad allegations of a conspiracy, his merely conclusory allegations with no supporting factual averments are insufficient to state a conspiracy. Thus, in the absence of any state action, Plaintiff's Section 1983 claims against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq.,[10] Verizon, T-Mobile, Sy Tech, and the Grand Jurors are not plausible as a matter of law. See Ciambriello, 292 F.3d at 325. Hence, Plaintiff's Section 1983 claims against Jason Russo, Esq., Steven Gaitman, Esq., Gaitman & Russo, PLLC, Steve Fondulis, Esq., Verizon, T-Mobile, Sy Tech, and the Grand Jurors are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

10    Though far from clear, to the extent Plaintiff seeks to assert a cause of action against his criminal defense attorneys based upon the theory of ineffective assistance of counsel, "an ineffectiveness [claim is not actionable] in a proceeding brought under § 1983." Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004).

3. Section 1983 Claims Against
Judge Collins and Judge Mazzei

*9   Further, Plaintiff's Section 1983 claims against Judges Collins and Mazzei are subject to dismissal for the additional reasons that, as judges employed by the state of New York, they are absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted; ellipsis in original). Rather, judicial immunity is overcome in only two instances. The first instance is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The second instance is liability arising from actions taken " 'in the complete absence of all jurisdiction.' " Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S. at 11-12; emphasis in the original). Here, nothing in Plaintiff's First Case Amended Complaint or his Post-Conviction Complaints suggests that either exception applies to overcome absolute judicial immunity. Although Plaintiff complains that the judges acted without jurisdiction, such allegations are belied by the fact that Plaintiff was tried and convicted in the state court. There can be no doubt that state court prosecution for violations of state laws relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Plaintiff's claims against Judges Collins and Mazzei are not plausible as a matter of law and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

4. Section 1983 Claims Against DA Sini, DA Tierney,
ADA Kubetz, ADA Powers, and ADA Wagner

It is well-established that prosecutors are absolutely immune from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature, but rather are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Simon v. City of N.Y., 727 F.3d 167, 171 (2d Cir. 2013). The actions for which a prosecutor is entitled to absolute immunity "include deciding whether to bring charges and presenting a case to a grand jury or a court." Simon, 727 F.3d at 171; Shmueli v. City of N.Y., 424 F.3d 231, 237 (2d Cir. 2005).

Here, Plaintiff alleges that the "District Attorney knowingly and intentionally presented Plaintiff's case to the Grand Jury and took Plaintiff to trial knowing that there was no search warrant or arrest warrant in this case." (Case No. 22-CV-5073(JS)(AYS), Compl. at 9, 13.) Further, Plaintiff complains that ADA Kubetz disclosed during his criminal prosecution that the warrants at issue were "never completed and filed by the detective who executed the warrants." (Id. at 11.) Plaintiff further alleges that ADA Kubetz "supplied false documents which was a false warrant execution paperwork." (Id.) In addition, Plaintiff alleges in conclusory fashion that ADAs "Kate Wagner, Meaghan Powers and Jacob Kubetz under the District Attorney of Suffolk County maliciously prosecuted the Plaintiff." (Id. at 13.) Moreover, Plaintiff complains that after he declined a plea offer from ADA Kubetz and the Chief of Narcotics, the District Attorney proceeded to trial on the top indictment charge. (Id. at 14.)

The decision to bring charges and to pursue such charges are squarely within the scope of the judicial phase of the criminal process for which DA Sini, DA Tierney, ADA Kubetz, ADA Wagner, and ADA Powers are absolutely immune from suit. Moreover, trial disclosures, the presentation of evidence during a criminal prosecution, and plea bargaining are clearly within the judicial phase of the criminal proceeding. See Ogunkoya v. Monaghan, 913 F.3d 64, 72 (2d Cir. 2019) (explaining that prosecutors have absolute immunity for decisions and acts that "constituted an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute"); Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986) (prosecutorial immunity "encompasses not only [prosecutors'] conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations") (cleaned up). Thus, even if Plaintiff's Section 1983 claims were not barred by Heck and its progeny, DA Sini, DA Tierney, ADA Kubetz, ADA Powers, and ADA Wagner are shielded from suit by absolute prosecutorial immunity for the challenged actions undertaken during the judicial phase of the subject criminal proceeding. [11] "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery ... because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of

the immunity." Deronette v. City of N.Y., No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citations, alterations, and quotation marks omitted). Accordingly, these claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2).

[11]    Notably, Plaintiff alleges that ADA Kubetz unlawfully obtained Plaintiff's location data from cell service providers beginning in February 2020. See Braithwaite v. Kubetz, et al., Case No. 22-CV-5359(JS)(AYS), Compl. at 6-9 (E.D.N.Y. 2022). Given that Heck's bar precludes adjudication of Plaintiff's Section 1983 claims (see supra at 22-25), the Court need not address the substance of Plaintiff's claims arguably pertaining to the investigative stage of the underlying criminal prosecution.

### 5. Claims Against the United States, NY State, and the Suffolk County District Attorney's Office

**\*10** Insofar as Plaintiff seeks relief against the United States and NY State, such claims are barred by sovereign immunity or Eleventh Amendment immunity, respectively. "The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, including suits against its agencies, except where sovereign immunity has been waived." Roberts v. U.S. Marshals Serv., No. 21-CV-11234, 2022 WL 2986683, at *3 (S.D.N.Y. July 27, 2022) (citing United States v. Mitchell, 445 U.S. 535, 538 (1980) (additional citation omitted)).

With regard to NY State, " 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)). Further, "[a]s agencies of the State of New York, [a district attorney office is] entitled to immunity under the Eleventh Amendment." Carthen v. Gonzalez, No.

19-CV-6392, 2020 WL 376569, at *2 (E.D.N.Y. Jan. 23, 2020) (citing Ying Jing Gan v. City of N.Y., 996 F.2d 522, 535 (2d Cir. 1993) (District Attorney's Office is protected by the Eleventh Amendment)); London v. Nassau County Dist. Attorney's Off., No. 20-CV-3988, 2020 WL 7699644, at *7 (E.D.N.Y. Dec. 28, 2020) (Seybert, J.) ("Eleventh Amendment immunity requires dismissal of all of Plaintiff's Section 1983 claims seeking damages against the Nassau County District Attorney's Office.")

Thus, the United States, NY State, and the Suffolk County District Attorney's Office are shielded by immunity, rendering Plaintiff's Section 1983 claims implausible. Therefore, these claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### 6. Claims Against Suffolk County and the Suffolk County Police Department

It is well-established that a municipality, like Suffolk County, cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y. City, 436 U.S. 658, 691 (1978); Agosto v. N.Y.C. Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly prohibits respondeat superior liability for municipalities" (citations omitted)). Rather, to state a claim against a municipality under Section 1983, " 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.' " Tafolla v. County of Suffolk, No. 17-CV-4897, 2021 WL 3675042, at *10 (E.D.N.Y. Aug. 19, 2021) (Seybert, J.) (quoting Littlejohn v. City of N.Y., 795 F.3d 297, 314 (2d Cir. 2015)). To establish the existence of a municipal policy or custom, the plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread as to practically have the force of law or that was so manifest as to imply the constructive acquiescence

> of senior policy-making officials; or (4) that a policymaking official exhibited deliberate indifference to constitutional deprivations caused by subordinates.

**\*11**  Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *3 (E.D.N.Y. May 18, 2021) (Seybert, J.) (cleaned up).

Here, when liberally construing the First Case Amended Complaint and the consolidated Post-Conviction Complaints, there are no factual allegations that a municipal policy or custom existed that caused the alleged constitutional deprivations of which Plaintiff complains. (See First Case Am. Compl. and Post-Conviction Compls., in toto.) Similarly, there are no allegations from which the Court could reasonably construe a plausible Section 1983 claim against Suffolk County. Thus, Plaintiff's Section 1983 claims against Suffolk County are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

Similarly, Plaintiff's claims against the Suffolk County Police Department (the "Police Department") are implausible. The Police Department cannot be sued because it is an "administrative arm," which does "not have a legal identity separate and apart from the municipality." Spagnuolo v. Suffolk County, No. 12-CV-4327, 2017 WL 4326510, at *2 (E.D.N.Y. Sept. 28, 2017) (citation omitted) (Seybert, J.), aff'd sub nom. Spagnuolo v. Howell, 814 F. App'x 614 (2d Cir. 2020); see also Sturgis v. Suffolk County Jail, No. 12-CV-5263, 2013 WL 245052, *2 (E.D.N.Y. Jan. 22, 2013) (sua sponte dismissing Section 1983 claims against the Suffolk County Police Department, among others, because it is an "administrative arm[ ] of the County of Suffolk [ ] [and] lack[s] the capacity to be sued"). Therefore, Plaintiff's claims against the Police Department are implausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### IV. State Law Claims

Given the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims that may be alleged and dismisses them without prejudice. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."); Carnegie-

Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."). Plaintiff is presently pursuing five cases in state court relating to and largely repetitive of the pleadings filed in this Court (see supra at 5 n.1); he may pursue any valid state law claims raised here in state court.

### V. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Given that Plaintiff has already been afforded the opportunity to amend his complaint -- and has done so (see First Case Am. Compl.) -- together with the fact that his conviction precludes adjudication of his Section 1983 claims under Heck, amendment would be futile. See Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend."); Polanco v. Capra, et al., No. 22-CV-4475, 2023 WL 2242702, at *2 (S.D.N.Y. Feb. 27, 2023) ("District courts generally grant a pro se plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies.") (citing Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). Further, as noted, Plaintiff has raised many of the claims presented here in state court. (See supra at 5, n.1.) Accordingly, leave to further amend the First Case Amended Complaint and the Post-Conviction Complaints is DENIED. [12]

[12] Such denial is without prejudice to Plaintiff pursuing habeas relief in a properly exhausted petition pursuant to 28 U.S.C. § 2254. Given that Plaintiff's direct appeal is presently pending, see People v. Braithwaite, Index No. 2022-9002 (App.

Div., 2d Dep't), such a habeas petition is premature at this time.

### CONCLUSION

**\*12** Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's IFP Applications are GRANTED;

**IT IS FURTHER ORDERED** that Plaintiff's cases captioned herein are CONSOLIDATED pursuant to Federal Rule of Civil Procedure 42 into the first filed case, No. 22 CV-0161(JS)(AYS). Thus, the Clerk of Court is DIRECTED to:

(1) CONSOLIDATE these actions; and

(2) mark CLOSED the cases assigned

Case Nos. 22-CV-5070(JS)(AYS), 22-CV-5071(JS)(AYS), 22-CV-5073(JS)(AYS), 22-CV-5074(JS)(AYS), and 22-CV-5359(JS)(AYS).

Any future filings are to be docketed in only Plaintiff's First Case, No. 22-CV-0161(JS)(AYS); and

**IT IS FURTHER ORDERED** that Plaintiff's First Case Amended Complaint and his consolidated Post-Conviction Complaints are sua sponte DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as set forth herein;

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum & Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the envelope.

### All Citations

Slip Copy, 2023 WL 2350030

---

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.